27 So.2d 215

**ALABAMA BY–PRODUCTS CO. v. LANDGRAFF.**

6 Div. 461.

Supreme Court of Alabama.

June 27, 1946.

Rehearing Denied Aug. 2, 1946.

Cabaniss & Johnston, W. H. Trueman and E. T. Brown, Jr., all of Birmingham, for petitioner.

Lipscomb & Lipscomb and W. E. Brobston, all of Bessemer, opposed.

FOSTER, Justice.

Certiorari to the Court of Appeals to review their opinion and judgment in a workman's compensation case.

The findings of the trial court are that the employee had sustained a decreased earning capacity of eighty percent; that he had been employed since his injury, but that he was restored to normal capacity on October 23, 1944, but for 45 weeks prior thereto he was partially disabled; that in that time he received employment of various kinds, without specifying the amount earned, but that it was considerably less than what he had earned before his injury, but not finding that he had refused employment which he was able to render, or any change in the wage scale. The court rendered judgment based on the statutory percentage of eighty percent of his average earnings before the injury, which the Court of Appeals affirmed.

The question for consideration relates to the proper meaning of section 279(B) 1, Title 26, Code, as applicable to the facts found. (B) 1 is that the amount of compensation is measured by a proportionate part of "the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition."

This formula is here applicable though his injury was partial and was of a member because it was temporary. If that sort of injury had been permanent it would have been controlled by section 279(C) 3. If the injury is permanent and partial, but not of a member, it is controlled by (C) 6, using the same formula as (B) 1, supra.

This Court in the case of Nashville Bridge Co. v. Honeycutt, 246 Ala. 319, 20 So.2d 591, was applying section 279(C) 6 to an injury which was permanent but partial and not controlled by subsection (C) 3. For such injury, as we have said, the amount payable is based upon the "difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition." The opinion should not be construed to mean that the second factor in the formula is always that of his earning capacity. In that case his earnings were more than his earning capacity would justify. The court correctly held that his earning capacity should control under such

circumstances, because what he received in excess of such capacity was a gratuity, and did not represent what he was "able to earn." 71 Corpus Juris 825, notes 31 to 35; Hulo v. City of New Iberia, 153 La. 284, 95 So. 719.

The trial court and the Court of Appeals in the instant case seem to have thought that the statute intended to fix earning capacity in all cases as the second factor in the formula not measured by the amount of average earnings he was able to earn after the accident, in applying subsections (B) 1 and (C) 6. But we cannot agree to that for reasons which we will discuss more fully.

■ The Honeycutt case, supra, is not clear to that effect, and we think that it is not a correct construction of these statutes. This is not so because one is for a temporary disability and the other is for a permanent disability, when the same formula is applicable to each. One being temporary will come to an end. The compensation must stop at that time but not later than 300 weeks if it continues beyond 300 weeks. The other, being permanent, will continue 300 weeks, but no compensation is payable beyond 300 weeks. While compensation continues, it is immaterial in respect to its amount whether it is temporary or permanent, when (B) 1 or (C) 6 controls. The only difference being that if it is only temporary it may terminate before the end of the 300 week period.

■ When the court proceeds to fix the amount as authorized by section 297, Title 26, Code, it is because there is a dispute about the matter between the parties. At that time, which is after the injury, the employee presumably will have had earning experience in his disabled condition. The court must then determine whether it is temporary or permanent, and whether it is controlled by subsection (B) or (C), and whether it is (C) 3 or (C) 6. If it is decreed to be temporary, the period of time must be fixed, and when fixed it cannot be changed because of subsequent changes in the condition of the employee. Ford v. Crystal Laundry Co., 238 Ala.

187, 189 So. 730; Sloss-Sheffield Steel & Iron Co. v. Nations, 243 Ala. 107, 8 So.2d 833.

■■ When the court proceeds to make determination of the amount, the statutory formula must be observed; likewise when the parties do so by negotiation. Under subsection (B) 1 as under subsection (C) 6, the second factor, as we have said, is the "average weekly earnings he is able to earn in his partially disabled condition." The formula explicitly calls for consideration of two elements in that factor: (1) his average weekly earnings; and (2) that he is able to earn in his partially disabled condition.

The case of Agricola F. Co. v. Smith, 239 Ala. 488, 195 So. 743, is not in point because it was a claim for the partial permanent loss of the use of a member, and the amount of compensation was controlled by (C) 3. The court noted that the provisions of (C) 4 (that when the employee refused to work in employment which he was offered and was suitable to his capacity, he is not entitled to compensation during the continuance of such refusal), had no application to (C) 3, but it was observed that there would be reason to consider that provision and his average weekly earnings in applying the formula for temporary partial disability (which is (B) 1, section 279, supra).

The cases cited by the Court of Appeals seem to be treating a formula different from our (B) 1 and (C) 6, and this applies to London Guarantee & Accident Co. v. Industrial Comm. et al., 70 Colo. 256, 199 P. 962, which also cites the same authorities.

■ Subdivision (C) 4, supra, is inconsistent with a claim which always fixes the status of the second factor in the formula at the extent of lost earning capacity alone, and so are (B) 2 and (C) 8.

It appears from the case of Herman v. Sunset Mercantile Co., Idaho Sup., 154 P.2d 487, 488, that Idaho has a statute similar to ours, with its second factor in the formula "weekly wages he is able to earn thereafter." It was said, "Under our compensation law, compensation is based upon loss of capacity to earn. This loss

is measured by what a workman of the same class and grade could earn in the employment in which he was, under the conditions prevailing therein, before and up to the time of the accident. * * * the board should have taken evidence whether or not this condition resulted in a loss of earnings, and if so the applicant is entitled to a weekly compensation equal to 55% of the difference between his average weekly wages before the accident, and the weekly wages he was able to earn afterward."

It appears from the cases of Voight v. Industrial Comm., 297 Ill. 109, 130 N.E. 470, 472, Mt. Olive & Staunton Coal Co. v. Industrial Comm., 301 Ill. 521, 134 N.E. 16, and Groveland Coal Mining Co. v. Industrial Comm., 309 Ill. 73, 140 N.E. 29, that for a partial disability, compensation is measured by a formula whose second factor is "the average amount which he is earning or is able to earn in some suitable employment or business after the accident." Compare that with that feature of the Alabama formula which is "the average weekly earnings he is able to earn in his partially disabled condition."

It was said in the Voight case, supra, "the words 'able to earn' were evidently added to express the idea that an employee cannot loaf or refuse to work and recover compensation if he is, in fact, physically able to earn wages." (This is emphasized in Alabama by our (C) 4, supra). And in the Mt. Olive case, supra, it is said: "If the employee is making an honest effort to work and the evidence shows that he is actually earning what he is able to earn, then a fair award for the partial disability he has suffered would be the statutory percentage of the difference between the average amount he actually earned before his injury and the average amount he is actually earning since his injury." It was also said in that case "the amount the injured employee is able to earn * * * will never be less, and may be more, than he actually earns." That is evidently based on the assumption that he is not earning more than his services are reasonably worth. That situation was not involved nor considered in those cases. This last quotation is quoted in the Groveland case,

supra [309 Ill. 73, 140 N.E. 30], in which there also appears the following expression: "If the employee is making an honest effort to work and the evidence shows that he is actually earning what he is able to earn but that it is less than he earned before his injury, then a fair award for the partial disability he has suffered would be the statutory percentage of the difference between the average amount he actually earned before his injury and the average amount he is actually earning since his injury. Where there has been a change in wage scale, that should be taken into consideration by the Commission in determining whether there has been a decrease in earning capacity. The object of this section of the statute is to compensate the injured employee for his reduced earning capacity, and if the injury does not reduce his earning capacity he is not entitled to compensation. There is no intent expressed in the statute to allow compensation for pain and suffering. The phrase, 'or is able to earn in some suitable employment or business,' was added to the section to prevent a person from loafing or refusing to work in order to collect compensation. Where the injured employee is not employed, then it becomes material to determine what he is able to earn at some suitable employment. Voight v. Industrial Comm., 297 Ill. 109, 130 N.E. 470. On a hearing under this section the Commissions should require proof of the actual earnings of the employee for a substantial period before the accident and of the actual earnings of the employee for a substantial period after he returns to work after the accident, or in the event he has not returned to work since the accident, proof of what he is able to earn in some suitable employment or business. The finding of a difference in earning capacity must find support in the evidence heard or it cannot be confirmed."

Ability to earn does not always mean earning capacity. But it carries the idea of ability to secure as well as to perform profitable employment, which may or may not be to the full extent of earning capacity. While it is sometimes said that the purpose is to compensate the worker for decreased earning capacity, it also appears that such capacity must be meas-

ured by his average earnings, representing the reasonable value of his services, when he is making an honest effort to secure and perform work to the extent of his capacity to do so. See 71 Corpus Juris 826, note 38; Tarascio v. S. C. Poriss Co., 116 Conn. 707, 164 A. 206. We think that expresses a correct interpretation of our section 279 (B) 1, supra.

Let us analyze and summarize the effect of what we have here said.

The second factor in section 279 (B) 1, Title 26, Code, is *"the average weekly earnings he is able to earn in his partially disabled condition."*

His percentage of decreased earning capacity must first be ascertained. All relevant evidence should be considered, including without being limited to the evidence of experts and the amount of his earnings after the accident. There is nothing to indicate that the trial judge did not observe this principle. We presume that he did.

The next inquiry relates more directly to the controlling effect of the proportionate loss of earning capacity in connection with the amount of his average actual earnings in determining the second factor stated above.

When these amounts are definitely fixed, they are material in three aspects in thus determining the second factor. One is where his average earnings exceed the reasonable value of his services measured by his decreased earning capacity; the second is where they are less than such earning capacity. The third is where they are equal to each other.

(1) If his earnings exceed his decreased earning capacity they are more than "he is able to earn," and the second factor in the formula is based upon the *proportionate loss of earning capacity* (as was done in this case, and as was held in the Honeycutt case, supra, to be proper).

(2) If his earnings are less than his decreased earning capacity could produce (a) *the amount of his average* earnings after the accident is to be taken as the second factor in the formula provided he was making an honest effort to obtain and perform lucrative employment to the extent of his capacity, for they are then as much as "he is able to earn": (b) but *his proportionate loss of earning capacity* is to be taken as the measure of the second factor, when he is earning less than his earning capacity could produce, if he is not making an honest effort to obtain and perform such employment to the extent of his capacity, for then he is not earning what "he is able to earn."

(3) Of course, if he is earning an amount equal to what his earning capacity can produce, his average earnings and his earning capacity would represent the same figure as the second factor.

If there is a change in the wage scale occurring after the accident that must also be considered.

### Effect of our conclusion.

The greater the spread is between the average earnings of the employee before his injury and his average earnings afterward under the second factor of the formula, the greater will be the amount of his compensation under (B) 1, supra. So that if his earnings after the injury are taken as the second factor of the formula and are less than he was able to earn, the result would be favorable to him. If his earnings are more than is justified by his earning capacity, the amount should be reduced to that of his earning capacity. Such reduction would increase the spread, operating to his interest. If his earnings are less than his earning capacity, a fixation of that factor at his earning capacity operates in favor of his employer in fixing his compensation under (B) 1, supra. So that to use his earning capacity, rather than his average earnings, as the second factor in the formula cannot be prejudicial to the employer but may be to the employee.

In the instant case his earning capacity was used and not his average earnings. That procedure therefore is not prejudicial to the employer because his average earnings as expressed in that factor cannot effectually exceed his earning capacity. Therefore the decree of the court is not prejudicial to the employer, but may be prejudicial to the employee. The employee is not here complaining, but

only the employer who has no cause to complain. There is no occasion therefore to reverse the judgment of the Court of Appeals, or of the circuit court, at the instance of the employer.

Affirmed.

All the Justices concur.