55 So.2d 507

**BIRMINGHAM POST CO. v. McGINNIS.**

6 Div. 256.

Supreme Court of Alabama.

Dec. 6, 1951.

Jackson, Rives & Pettus, Birmingham, for appellant.

Roscoe B. Hogan, Birmingham, for appellee.

LAWSON, Justice.

This is a review of a judgment in favor of the employee under the Workmen's Compensation Law, § 253 et seq., Title 26, Code 1940.

The case was tried before the court without a jury. The defendant offered no testimony.

It is admitted that on December 8, 1949, F. C. McGinnis was an employee of The Birmingham Post Company and that McGinnis and the Company were both subject to the terms and provisions of the workmen's compensation law of this state then in effect. It is further admitted that on December 8, 1949, McGinnis was in an automobile accident which arose out of and in the course of his employment.

Counsel for appellant recognizes the rule governing our review of cases arising under the workmen's compensation law to the effect that if there is any reasonable view of the evidence that will support the conclusion reached by the trial court, the finding and judgment will not be disturbed, but insist that the judgment here under review should be reversed for the reason that there is a total absence of any legal evi-

dence to support the finding of the trial court in several material respects.

■ Where there is a total lack of evidence on the trial to support the finding of material fact, a question of law is presented which this court will review. Hamilton Motor Co. v. Cooner, 254 Ala. 422, 47 So. 2d 270.

The judgment entered on April 13, 1951, contains a finding of facts and conclusions of law. In view of the contention asserted by appellant on this appeal, the transcript contains a record of the evidence heard by the trial judge.

Appellant first insists that there is no legal evidence to support the finding of the trial court that in the automobile accident which occurred on December 8, 1949, McGinnis sustained the injury for which compensation has been awarded. We cannot agree with this insistence.

Compensation was allowed on the finding that McGinnis was "suffering from traumatic neuritis" resulting from a fracture of the ninth rib on his left side, which he suffered in the automobile accident on December 8, 1949.

It is without dispute in the evidence that an X-ray examination made by Dr. Carmichael on October 8, 1950, disclosed that at some time prior thereto McGinnis had suffered a fractured rib on his left side. On the occasion of the examination, McGinnis was suffering considerable pain in his left side and Dr. Carmichael diagnosed his trouble as "a neuritis of traumatic origin." For the purpose of determining if there were other causes of pain, McGinnis was referred to several specialists whose reports were negative. These reports did not reflect upon the original diagnosis made by Dr. Carmichael, but according to the medical testimony tended to support it, inasmuch as other causes of the pain were eliminated. After receiving the reports of the specialists to whom he had referred McGinnis, Dr. Carmichael again examined him and made a final diagnosis. In regard to the final diagnosis, Dr. Carmichael testified: "The final diagnosis was what we assumed the most likely diagnosis in the first place: a neuritis, probably of trau-

matic origin; probably associated with the fracture of the rib, probably." This evidence, though cautious, shows that it was Dr. Carmichael's opinion, first, that McGinnis was suffering from neuritis and, second, that the neuritis resulted from a blow which fractured his rib.

■ There is no direct evidence that the rib was fractured in the automobile accident, but we think the tendencies of the evidence fully support the trial court's finding to that effect. Southern Cement Co. v. Walthall, 217 Ala. 645, 117 So. 17; Goslin-Birmingham Mfg. Co. v. Gantt, 222 Ala. 321, 131 So. 905.

It is without dispute that prior to the date of the accident McGinnis had suffered no pain in his left side, nor had he received a blow in that portion of his body. It is also without dispute in the evidence that in the accident McGinnis' left side was thrown against the dashboard of the automobile, and from that moment until the date of trial he suffered considerable pain in that area of his body. Immediately after the accident he was sent by his employer, or his employer's agent, to a physician, who made an X-ray examination and immediately thereafter taped McGinnis' side. The result of that X-ray examination was not shown. It does not appear that the X-ray picture was in the possession of McGinnis. The physician who made it was paid for his services by the Company and, as before shown, the Company introduced no evidence. McGinnis made several trips to this physician and made complaint to him in regard to the pain he was suffering in his left side. Being dissatisfied with the results of the treatment, McGinnis, shortly after the accident, sought the services of Dr. Carmichael; but McGinnis was still a patient of the physician to whom he had been sent by the Company and, because of professional ethics, Dr. Carmichael refused to accept him as a patient at that time. It was about ten months after the accident that Dr. Carmichael began his treatment of McGinnis.

The trial court found that as a result of the injury McGinnis suffered a temporary partial disability. Section 279(B) 1, Title

26, Code 1940, as amended, provides in pertinent part as follows: "In all cases of temporary partial disability the compensation shall be fifty-five percent of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition. * * *"

In Alabama By-Products Co. v. Landgraff, 248 Ala. 253, 258, 27 So.2d 215, 219, we said:

"The second factor in section 279(B) 1, Title 26, Code, is *the average weekly earnings he is able to earn in his partially* disabled condition.'

"His percentage of decreased earning capacity must first be ascertained. All relevant evidence should be considered, including without being limited to the evidence of experts and the amount of his earnings after the accident. There is nothing to indicate that the trial judge did not observe this principle. We presume that he did.

"The next inquiry relates more directly to the controlling effect of the proportionate loss of earning capacity in connection with the amount of his average actual earnings in determining the second factor stated above.

"When these amounts are definitely fixed, they are material in three aspects in thus determining the second factor. One is where his average earnings exceed the reasonable value of his services measured by his decreased earning capacity; the second is where they are less than such earning capacity. The third is where they are equal to each other.

"(1) If his earnings exceed his decreased earning capacity they are more than 'he is able to earn,' and the second factor in the formula is based upon the *proportionate loss of earning capacity* (as was done in this case, and as was held in the Honeycutt case, (Nashville Bridge Co. v. Honeycutt, 246 Ala. 319, 20 So.2d 591), supra, to be proper)."

■■ In the instant case the trial court used as the second factor in the formula McGinnis' decreased earning capacity rather than his average earnings. This was proper under the holding of this court in Alabama By-Products Co. v. Landgraff, supra, as applied to the evidence in this case, which we think sufficient to support a finding that McGinnis' earnings subsequent to the accident exceeded his earning capacity.

■ Appellant contends that there was no legal evidence to support the finding of the trial court that McGinnis' earning capacity had decreased twelve and one-half percent. The evidence on this point is meager. It comes only from an expert witness who testified cautiously, if not reluctantly; but we are not willing to say that his testimony as it related to this point was not sufficient to support the finding of the trial court.

■ Written notice of the accident and injury was not given, as required by statute. §§ 294, 295, Title 26, Code 1940. But it has been uniformly held that the giving of such notice is not a condition precedent if it appears that the employer had independent knowledge of same within the time required for the written notice. Sloss-Sheffield Steel & Iron Co. v. Watts, 236 Ala. 636, 184 So. 201. The trial court found that the employer had knowledge of the injury and we will not disturb that finding if there is any evidence tending to show knowledge. American Radiator Co. v. Andino, 217 Ala. 424, 116 So. 121.

■ We think there was evidence to support the finding of the trial court that the Company had knowledge of the injury, independent of written notice from McGinnis. The evidence shows that immediately after the accident the plaintiff returned to the office of his employer, where he talked with Mr. G. E. Pierre, the circulation manager and McGinnis' immediate superior. McGinnis was then driven to a physician by another employee of defendant company. The services of this physician were paid for by the Company and it is conceded in brief that he was "the company doctor." As before indicated, this physician not only treated McGinnis for injuries to his head and knee, but also made an X-ray of his side and taped

it. Within a period of a few days McGinnis made eight or ten visits to this physician in an effort to obtain relief from the pain in his side. Shortly thereafter he requested permission from the office manager to have his personal physician administer to him. This permission was granted. After going to his personal physician, McGinnis was unable to obtain the X-ray pictures from the Company doctor.

We think under the circumstances outlined above, the trial court was justified in finding that the company had actual knowledge of the injury to McGinnis' left side within the period in which written notice must be given. The employer had no actual knowledge within the ninety-day period of the fact that traumatic neuritis had resulted. However, as before indicated, it did have knowledge of the specified injury, namely, the injury to McGinnis' left side, which the evidence tends to show caused neuritis.

The judgment of the circuit court is affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.