213 So.2d 806

**N. J. BELL, III, et al., d/b/a Whitley Hotel**

**v.**

**Charlie DRISKILL.**

**3 Div. 185.**

Supreme Court of Alabama.

Aug. 22, 1968.

Rehearing Denied Sept. 19, 1968.

Rushton, Stakely & Johnston, Montgomery, for appellants.

Walter J. Knabe, of Capell, Howard, Knabe & Cobbs, Montgomery, for appellee.

SIMPSON, Justice.

This case was initially assigned to the late lamented Justice Goodwyn and, after his untimely death, was assigned to the writer.

The proceeding was commenced in the Circuit Court of Montgomery County on December 18, 1963, for the recovery of benefits under the Alabama Workmen's Compensation Law, Code 1940, Tit. 26, § 253 et seq., as amended by Charlie Driskill, appellee, for disability allegedly resulting from an accident which arose out of and in the course of his employment by N. J. Bell, et al., d/b/a The Whitley Hotel, defendants below and petitioners here. The trial court awarded compensation to the plaintiff and the case is here on certiorari brought by defendants.

The defendants admitted in their answer to the complaint that the parties were subject to the Workmen's Compensation Laws of Alabama, that the plaintiff suffered an injury from an accident arising out of and in the course of his employment with the defendants on the date complained of, that defendants received prompt and immediate notice thereof, and that plaintiff had a dependant wife at the time of the accident.

As to the accident causing the injury, the complaint alleged:

"* * * Plaintiff was moving automobiles in the parking lot or garage operated by the defendants. At said time and place and while on the way to move a car, and while on the premises of defendants, and while plaintiff was acting in the line and scope of his employment, plaintiff's ankle or foot turned and plaintiff's right leg and right knee were severely injured. He was injured to such an extent he is unable to hold any job for which he was or is now qualified; he is totally and permanently disabled. Said injury arose out of and in the course of plaintiff's said employment."

Plaintiff alleged that at the time of the injury he was receiving a salary of $40.00 per week.

The defendants' answer alleges in part:

"2. Plaintiff has been paid Workmen's Compensation benefits for 78¾ weeks at the rate of $24.00 per week and medical expenses on his behalf have been paid up to the statutory limit of $1,200.00.

"3. Plaintiff's average weekly earnings within the meaning of the Workmen's Compensation Laws, at the time of the injury was $37.50. Plaintiff had a dependent wife but not dependent children at the time complained of.

"4. Plaintiff suffered temporary total disability for 78¾ weeks and permanent partial disability in the amount of 45 per cent of the right lower extremity. Since the weeks of temporary total disability exceed the number of weeks of compensation to which he is entitled for permanent partial disability, all benefits to which he is entitled have been paid. Defendants deny that plaintiff is entitled to any further compensation under the Workmen's Compensation Laws of the State of Alabama.

"5. Defendants deny that plaintiff has suffered any permanent injury except for the injury to his right lower extremity. Defendants deny that he is totally disabled and allege that he is presently working on a regular basis at regular employment earning regular wages at a permanent job."

Evidence was taken orally before the trial court from which the court found, as a part of its findings of facts, that plaintiff had suffered a temporary total disability and a permanent partial disability, that his earning capacity has been decreased 90%, that the proximate results of the accident included more than an injury to his leg, and that compensation is payable under § 279 (C)6 of Tit. 26, Code 1940, as amended. It was found that plaintiff had been totally disabled for a period of 80 weeks and that he had already received compensation for 78¾ weeks. The court also found that plaintiff is entitled to compensation for a period of 300 weeks for permanent partial disability, less 80 weeks for temporary total disability, or a total of 220 weeks.

The trial court's decree was, in part, as follows:

"1. That plaintiff recover of the defendants compensation for a period of 80 weeks for temporary total disability at the rate of $24.00 per week. Payment for 78¾ weeks at $24.00 already made, shall be deducted, leaving an additional 1¼ weeks to be paid for at $24.00. In addition, defendants shall pay the sum of $21.60 per week for a period of 220 weeks. As a total of 164 weeks has elapsed as of February 8, 1965, since the accident, and as 80 weeks are accounted for, for total permanent disability, defendants shall immediately pay 84 weekly payments to plaintiff and shall pay him at the rate of $21.60 beginning February 15, 1965, for an additional period of 136 weeks, making a total of 300 weeks to be paid. Amounts now payable are as follows:

| | |
|---|---|
| 1¼ weeks balance temporary total disability at $24.00 | $ 30.00 |
| 84 weeks part permanent partial at $21.60 | 1814.40 |
| Total compensation to February 8, 1965 | $1844.40" |

The facts in this case show that, on ·or about December 14, 1960, plaintiff was employed by the Whitley Hotel in Montgomery. He had been employed at the hotel since 1932 in various capacities but since 1955 his work had been confined entirely to a garage operated by the hotel. His job consisted of parking cars and working as cashier to collect money from garage patrons. His salary was $150.00 per month plus occasional payments for overtime.

Plaintiff sustained the injury when he turned his foot or ankle while walking down the ramp in defendants' parking garage. Following his injury in December, 1960, plaintiff continued to work until August 25, 1961. Thereafter, he had two operations on his knee. He did not return to work at

the garage until January 15, 1964, and then only to temporarily replace a man who had had a heart attack. At that time, he acted as cashier and *directed* the parking of cars. He did not park the cars himself. When the man he replaced returned to work, plaintiff was without a job.

He then acquired a job with the State of Alabama as a mailman but quit after four days due to his inability to do the extensive walking the job required.

Through the efforts of one of the defendants, plaintiff was given a job at the First Baptist Church parking lot, acting as cashier and directing the parking of cars. His salary was $32.00 per week and this was the job he held at the time of the trial.

Plaintiff's injuries were as follows, quoting from the trial court's findings:

"The time of hearing was approximately four years or 208 weeks after the injury. At that time he was still suffering from the injury. When he worked his knee would swell, particularly at night, and would be so painful that he could not sleep. His wife would be up much of the night massaging his leg and keeping a hot pad on it. His nervous system was affected, as evidenced by his emotional breakdown during the hearing; he carried a bottle of aspirin tablets with him at all times, which sometimes relieved his pain and sometimes did not; he would suffer pain at times from periods extending from two hours to a day or two; the 15 pound brace absorbed plaintiff's energy, but the energy loss was of less importance than the pain he would suffer without the brace; when he was not working he kept his leg elevated to prevent swelling; he had lost his stability. He was still under the care of a specialist and would continue to be under such care for two months following the hearing; after which time he was expected to be discharged as having received maximum treatment."

The evidence showed that plaintiff had a sixth-grade education. He had performed manual labor all his life and was not trained or qualified for any other type of work. His physician stated that plaintiff was unable to perform manual labor in his present condition, unless that could be accomplished by a sedentary occupation. The doctor stated that, in his opinion, the plaintiff has a permanent disability of 45% to the right leg.

The basic point of dispute in this case seems to be whether plaintiff's injury should be compensated under the provisions of § 279(C)1 of Tit. 26, or under the more remunerative (for plaintiff) provisions of § 279(C)6. Defendants argue in support of the application of the former, plaintiff for the latter.

Section 279(C)1 provides, in part:

"For permanent partial disability the compensation shall be based upon the extent of such disability. In cases included in the following schedule the compensation shall be fifty-five percent of the average weekly earnings, during the number of weeks set out in the following schedule:

\*    \*    \*    \*    \*    \*

"For the loss of a leg, one hundred and seventy-five weeks."

Section 279(C)6 provides:

"In all other cases of permanent partial disability not above enumerated, the compensation shall be fifty-five percent of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition subject to the same maximum weekly compensation as stated in section 289 of this title."

Defendants' argument in support of reversal of the trial court's decree is divided into four parts. We will answer these arguments in the order in which presented by defendants' brief.

## I.

Defendants contend it was error for the trial court to award compensation to plaintiff under § 279(C)6 of Tit. 26 rather than under § 279(C)1, since plaintiff's only injury was to his right knee.

■ We should first reiterate the long standing rule in this court that on certiorari to review judgments in compensation cases, this court does not look to the weight of the evidence as to any fact found by the trial court, but looks to see if there is any evidence to support the facts found by the trial court. Tiger Motor Co. v. Winslett, 278 Ala. 108, 176 So.2d 39; Head v. Triangle Construction Co., 274 Ala. 519, 150 So.2d 389.

In its final determination and judgment, the trial court set forth the evidence which convinced it that the injury to plaintiff extended beyond a mere leg injury. A paragraph from the court's opinion is set forth above. The court concluded:

"Plaintiff was examined in open court, and the Court observed him, saw the extent of his injuries, the slowness and difficulty with which he moved, and the condition of his leg and body. The Court finds that plaintiff's injury is far more extensive than a leg injury."

The question of the exclusiveness of schedule allowances in Workmen's Compensation Laws is discussed in 2 Larson, Workmen's Compensation Law, § 58.20, pp. 44–45, where it is stated:

"The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive. A common example of this kind of decision is that in which an amputation of a leg causes pain shooting into the rest of the body, general debility, stiffening of the hip socket, or other extended effects resulting in greater interference with ability to work than would be expected from a

simple and uncomplicated loss of the leg."

This same problem is treated in an annotation in 156 A.L.R. 1344, where the rule is said to be as follows:

"The rule, however, is well established that where an employee has received a specific injury which spreads to other parts of the body and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, the employee is not limited to a recovery of the special allowance provided for in case of injury to a specific member or members, but may recover under the provisions of the act for compensation in case of disability."

Numerous cases are cited in the annotation as authority for this statement. (See also the recent cases cited in 1967 Supplement to Larson's, Vol. 2, beginning at page 49 of the supplement.)

In Warrior Stone & Contracting Co. v. De Foor, 241 Ala. 227, 2 So.2d 430, the employee sustained an injury to his leg, the effects of which extended beyond a mere injury to the leg and affected his whole body. The case is similar to the one at bar in that the trial judge there found that as a result of the injury, the employee

"* * * has been unable to stand on his feet for any length of time; has become weak and faint after walking short distances; that his nervous system has been shocked and disarranged; that a substantial portion of both bones in petitioner's leg has been crushed; that said bones have failed to knit and heal; that said bones are not in alignment, but are so off-set as that they are unable to carry the weight of petitioner's body; the peculiar and unique malformations resulting from petitioner's said injuries, as personally observed and examined in open court by the Court, can not be truthfully and fairly expressed in any

percentage of disability of any designated member or members of the petitioner's body."

In that case, the trial court found that the employee sustained a permanent partial disability of 80%.

■ We conclude that although the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the Workmen's Compensation Law to the amount allowed under the schedule for injury to the one member.

## II.

■ Defendants argue that where an injured employee returns to gainful employment making substantially the wages he was making at the time of the injury, it is error to award him compensation based upon a 90% decrease in earning capacity.

An identical argument was rejected by this court in Goodyear Tire & Rubber Co. of Alabama v. Downey, 266 Ala. 344, 96 So.2d 278, where we stated:

"It is insisted by the company that since the evidence shows that plaintiff, after his injury, received the same salary which he received prior thereto, that this excludes the idea that his ability to earn has been decreased as a result of his disability. While this might presumptively indicate that his ability to earn has not been impaired, the mere fact that his employer pays him the same earnings in his disabled condition as it did before he was injured is not the sole determining factor. The statute does not prescribe comparative wages received before and after the injury as the test of the employee's ability to earn. Instead, the test is the difference between the average weekly earnings at the time of the injury and the average weekly earnings the employee 'is able to earn in his partially disabled condition'. It seems to us that this clearly excludes any notion of limiting the determination of a loss in ability to earn to the one question of wages actually earned after the injury as compared with those earned before. There are other factors which may be considered."

For other authority, see Birmingham Post Co. v. McGinnis, 256 Ala. 473, 55 So.2d 507; Alabama By-Products Co. v. Landgraff, 248 Ala. 253, 27 So.2d 215; Nashville Bridge Co. v. Honeycutt, 246 Ala. 319, 20 So.2d 591; Agricola Furnace Co. v. Smith, 239 Ala. 488, 195 So. 743; and 2 Larson, Workmen's Compensation Law, § 57.21, pp. 4–6.

## III.

Defendants contend that the finding that plaintiff suffered a 90% loss of earning capacity is not supported by the evidence.

■ We again avert to the long standing rule that, on certiorari in workmen's compensation cases, where there is any legal evidence, or reasonable inference therefrom, to support the finding of facts of the trial court, such finding is conclusive, and the judgment thereon will not be disturbed. 19A Ala.Digest, Workmen's Compensation ⬦1940.

■ It is also well established that the Workmen's Compensation Act should be given a liberal construction to accomplish its beneficent purposes. City of Foley v. Terry, 278 Ala. 30, 175 So.2d 461.

There is considerable evidence that plaintiff is almost totally disabled, or at least disabled to the extent that he has practically lost all earning capacity. He has only a sixth grade education and is unqualified for any work other than manual labor. At the time of the trial, plaintiff was 60 years old. His physician stated that he was unable to perform manual labor other than

the type that could be performed in a sedentary occupation. His injury is such that he is unable to remain on his feet for any extended length of time, and when he does, the knee swells and causes him considerable pain. His employment at the time of the trial was secured only through the efforts and influence of a man for whom the plaintiff had worked for thirty years.

■ While it is true no one at the trial used the figure of 90% in describing plaintiff's decrease in earning capacity, we believe, under the evidence presented, the trial judge was warranted in so finding. This conclusion is supported by the holding in the recent case of Semmes Nurseries, Inc. v. McVay, 279 Ala. 42, 181 So.2d 331, where we stated:

"There is no testimony using the words that plaintiff is partially permanently disabled, or that the extent of the permanent disability is sixty per cent, or any other number of per cent, of plaintiff's whole body. We do not think, however, that the law demands testimony, expert or otherwise, in the words 'sixty per cent permanent partial disability', or any other number of per cent, in order to sustain a finding that plaintiff had a permanent partial disability amounting to sixty per cent of his body as a whole."

See also the recent case of Kroger Co. v. Millsap, 280 Ala. 531, 196 So.2d 380.

In Brunson Milling Co. v. Grimes, 267 Ala. 395, 103 So.2d 315, this court stated that *"total* disability within the Workmen's Compensation Act does not mean absolute helplessness or entire physical disability, but means inability to perform the work of one's trade or inability to obtain reasonably gainful employment." (Emphasis added.)

We cannot say that a finding that plaintiff suffered a 90% loss of earning capacity is unsupported by evidence.

## IV.

■ Defendants' fourth argument in support of reversal of the trial court's

judgment alleges that the court erred in that compensation should have been based on "average weekly earnings" instead of "weekly pay" and that § 279(G) defines the method of computing "average weekly earnings"; that no "average weekly earnings" were proved or found by the court; nor were they alleged in the complaint; rather the award was based on "weekly pay" and pay "per week"; and that even if the allegation of weekly pay could suffice for a determination of "average weekly earnings", the findings are totally inconsistent with the proof because $40.00 per week was alleged and $150.00 per month proved.

From the following language contained in the court's finding, it appears that the trial court was fully aware of the concept of "average weekly earnings" and the method by which it is computed:

"Compensation payable under this subsection is a percentage 'of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition'."

In arriving at the amount of compensation due plaintiff, the court made the following computations:

" * * * Plaintiff had received a total of $1,890 to cover 78¾ weeks of compensation, same being at the rate of $24 per week. As the plaintiff and his wife lived together and he would therefore receive 60% of his pay as compensation, his weekly pay before injury was $40.00. The Court finds this to be the weekly basis on which compensation should be determined."

Defendants' chief concern seems to be whether the amount of $40.00 is an accurate appraisal of plaintiff's "average weekly earnings". Defendants alleged in their answer that plaintiff's average weekly earnings were $37.50, but they also alleged: "2. Plaintiff has been paid Workmen's

Compensation benefits for 78¾ weeks at the rate of $24.00 per week * * *" ($24.00 is 60% of $40.00). Further, during the hearing the plaintiff's attorney stated that he would like the record to show by agreement of counsel that plaintiff had received checks for 78¾ weeks' compensation, to which the defendants, through counsel, added, "at the lawful rate". Attorney for plaintiff then stated that, by agreement of counsel, the plaintiff "has been paid at the rate prescribed by law insofar as his weekly compensation is paid, that is, at the rate which he is being paid is correct". Defendants made no objection to this statement.

In answer to defendants' contention that there is a variance between the pleading and the proof as to how much the plaintiff was paid, the following testimony of plaintiff is taken from the record:

"Q.  Now, how much did you make when you were down at the Whitley Hotel?

"A.  I made $150 a month down there. I drawed $75 every pay day.

"Q.  On some weeks did you make more than that?

"A.  Yes. Some weeks when I would work overtime they paid me a little more.

"Q.  You made enough so that whatever this amount weekly they paid you figures up to sixty per cent of it. Is that correct?

"A.  That's correct, sir."

It is thus clear that plaintiff was paid in excess of $150.00 per month and, according to his statement, the $40.00 figure is correct as a statement of his weekly pay.

We believe that by answer and by admission in open court, defendants agreed that $24.00 weekly was the proper amount of compensation payable to plaintiff, and that this amount was based on the proper computation of plaintiff's "average weekly wage".

Affirmed.

LIVINGSTON, C. J., and COLEMAN and KOHN, JJ., concur.