This is a workmen's compensation case.
The Circuit Court of Mobile County, after an ore tenus hearing, found that the employee had suffered a seventy-five percent permanent partial disability to his body as a whole (and a correspondingly reduced earning capacity) as the result of a job connected accident, and awarded compensation at the rate of $60 per week for 300 weeks. The employer seeks review of that judgment here by way of certiorari as provided by Title 26, Section 297 (E), Code of Alabama 1940 (Recomp. 1958).
The employer, in brief filed to support his petition for certiorari, says that the trial court erred by failing to find that the employee suffered an injury to his foot only and therefore should have been compensated for this loss under the statutory schedule found in Title 26, Section 279 (C)(1), Code of Alabama 1940 (Recomp. 1958). He claims further error in the trial court's finding that the employee suffered a seventy-five percent permanent partial disability to his body as a whole and a consequent seventy-five percent diminished earning capacity.
The evidence shows the claimant-employee had been a carpenter for about twenty years. While working as a carpenter for petitioner-employer, the employee fell when the scaffolding on which he was standing collapsed, breaking both bones in the lower part of his left leg. He was taken to a hospital where the fractures were set and a cast placed on the leg. Several weeks later the employee returned to the hospital to have the leg reset so that the breaks could be more properly aligned. Another cast was placed on the leg.
After the cast was removed several months later, the employee was fitted with a leg brace, which remained on the leg for about a year and a half. The employee still is required to wear the brace when he walks on uneven ground. Due to inability to completely straighten his knee, the employee's left leg is now one inch shorter than his right leg. He must wear a built-up shoe on his left foot. *Page 954 
The employee testified that he first experienced pain in his lower back about a month after the cast had been removed and the brace installed on his left leg and before he was fitted with a sufficiently built-up shoe. He had never before experienced pain in this area of his body. The pain, which has been with him since that time, prevents him from sleeping through an entire night and from engaging in any prolonged physical activity. Due to a lessened area of movement of his left knee and left leg, he cannot sit in any one position for any length of time but must move about and stretch.
Dr. J. Nelms, an orthopedic surgeon in Mobile, Alabama, treated the employee initially and has treated him since then up to the time of trial. The doctor testified that the employee now has an atrophied left thigh and calf, limited extension of the left leg, a ten degree angulation at the fracture site, a one inch shortening of the left leg, scoliosis or curvature of the spine, a limp, and low back pain. He attributed the pain to the shortened leg, which caused an unbalanced distribution of weight, and attributed the shortened leg and scoliosis to the injuries received on the job in 1972.
Dr. Mostellar, an orthopedic surgeon who also treated the employee, reported that he found a deformed left leg, scoliosis, a list to the left while standing, and some numbness in the left foot caused by nerves in the lower back. The scoliosis, which could be due to the shortened leg, places unusual stress on the lower back area and is consistent with the type injury suffered by employee.
The employee has a tenth grade education. Prior to taking up carpentry he worked on his father's farm for five or six years and operated a forklift for a short period of time. For most of the twenty years he was employed as a carpenter, he was a frame carpenter, which entailed putting up house frames. While much of his work was performed on the ground, he was also required to climb ladders and work on scaffolds. The area around building sites is usually littered with debris. Often the ground is uneven, with many holes and depressions, making walking in the area difficult.
The employee says he can no longer do the work of a frame carpenter because too much walking or standing is painful; he is now afraid to climb on scaffolding. Dr. Nelms testified it would be hazardous for the employee to climb ladders, work on scaffolds, or walk around in areas where the ground is uneven and there is a lot of debris.
The employee is trained only as a frame carpenter; he cannot do carpentry work that would allow him to remain on a smooth floor on the ground, e.g. cabinet construction. He has unsuccessfully sought several carpentry jobs since being told by Dr. Nelms that he may again work.
The criteria for review of a workmen's compensation case is set out in our case of B.F. Goodrich Co. v. Martin, 47 Ala. App. 244, 253 So.2d 37, cert. den., 287 Ala. 726, 253 So.2d 45 and287 Ala. 726, 253 So.2d 46 (1971), and quoted with approval in our recent case of Allied Paper Incorporated v. Davis,342 So.2d 363 (Ala.Civ.App. 1976):
 "`Our review by certiorari does not perform the functions of an appeal. The weight or preponderance of the evidence or whether the finding of fact by the trial court is proper is not before us on review by certiorari. We must accept such finding if it is supported by any legal evidence.'"
Petitioner first contends that because the only injury suffered by the employee at the time he fell from the scaffold was a leg broken below the knee, the employee should have been compensated under Section 279 (C)(1), supra, for the loss of a foot, rather than under Section 279 (C)(6), as he was.
Section 279 (C)(1) contains a schedule of compensation for permanent partial disability due to loss of specific members of the body, including the loss of a foot. Amputation between the knee and ankle is considered the equivalent of the loss of a foot. *Page 955 
We think petitioner's reliance on Section 279 (C)(1) is misplaced. There has been no amputation, and thus no actual loss of either leg or foot. Likewise we reject petitioner's argument by analogy. The employee has not lost all use of his left leg, nor is his injury limited only to his left leg. Petitioner relies upon Leach Mfg. Co. v. Puckett, 284 Ala. 209,224 So.2d 242 (1969), which held that an employee is limited to recovery under Section 279 (C)(1) where the injury suffered results in the loss of the use of a member and there is no other physical disability of the body. This case is inapplicable, since the evidence amply indicates that the employee's entire body was affected by the injury initially sustained by the left leg.
We think the controlling principle here is that stated inBell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968) and followed by this court in City of Moulton v. Pearson,54 Ala. App. 340, 308 So.2d 252 (1975):
 "We conclude that although the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the Workmen's Compensation Law to the amount allowed under the schedule for injury to the one member." 282 Ala. at 646, 213 So.2d at 811.
Petitioner's next contention is that the trial court erred in finding that the employee suffered a seventy-five percent permanent partial disability of his entire body, a finding he claims is unsupported by the evidence. The only testimony relating to percentage of impairment was that of one doctor who treated the employee and testified on the employee's behalf. The doctor stated the employee suffered a thirty percent impairment of his left leg, with a twelve percent impairment to his body as a whole.
Our supreme court has held that in workmen's compensation proceedings, the opinions of experts are not conclusive on the trier of fact, even if the testimony is uncontroverted. KrogerCo. v. Millsap, 280 Ala. 531, 196 So.2d 380 (1967). There the trial court found the employee to be seventy-five percent disabled, even though the expert testimony was that in his opinion the employee was twenty percent disabled. The supreme court noted that
 ". . . the percentage of partial and permanent disability was an issue arising from the evidence that was addressed to the trial court." 280 Ala. at 535, 196 So.2d at 384.
After a careful examination of the evidence in this case, pertinent parts of which are set out above, we are convinced that there is sufficient legal evidence to support the trial court's finding that the employee suffered a seventy-five percent permanent partial disability to his body as a whole, with a corresponding seventy-five percent reduced earning capacity.
Since we find no reversible error, the trial court's judgment is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.