We granted Dunlop Tire Corporation's petition for certiorari review of the decision of the Court of Civil Appeals reversing the trial court's judgment in this workers' compensation case. Morrowv. Dunlop Tire Corp., 772 So.2d 1161 (Ala.Civ.App. 1999). The trial court awarded Dunlop's employee, Kelly M. Morrow, benefits for the loss of her right arm, in accordance with the schedule in Ala. Code 1975, § 25-5-57(a)(3); it did not award her benefits for an injury to her body as a whole, which she had argued she was entitled to. The Court of Civil Appeals held that the trial court's finding that Morrow suffered an injury to her arm, and not to her body as a whole, was not supported by substantial evidence. The trial court also found that a second injury to her right arm was not a compensable injury. The Court of Civil Appeals held that that finding also was not supported by substantial evidence.
 I.
Morrow was employed by Dunlop Tire Corporation as a master tire builder. Her right forearm was crushed on March 16, 1996, when it was drawn into a tire-building machine. The bones in her arm were fractured and fragmented. Dr. Louis G. Horn performed surgery to repair Morrow's arm. He reattached the bone fragments with plates and screws. Morrow returned to work on April 17. She tried to resume her work as a master tire builder, but she could not make the production quota because she had difficulty cutting the rubber used to make tires. She was later reassigned to a light-duty clerical position.
On April 14, 1997, Dr. Horn performed a second surgery to remove the plates and screws in Morrow's arm. Dr. Horn testified that he advised Morrow to increase the use of her arm gradually over six weeks because areas under the plates and around the screw holes would be weak for that period. According to Dr. Horn, Morrow appeared to be making regular progress after the second surgery. She returned to work on May 12.
On May 14, 1997, Morrow tripped and fell while carrying a basket of laundry at her home. She again fractured her right arm. According to Dr. Horn, the fracture was a nondisplaced fracture through one of the screw holes. Dr. Horn placed Morrow's arm in a cast. She returned to work on August 11. Morrow again attempted to resume her work as a master tire builder, but she was again unable to meet *Page 1169 
production quotas because of the difficulty she had cutting rubber.
Morrow testified at trial that when she attempted to cut rubber, her arm would begin to hurt and her wrist would give out. She described the sensations in her arm as numbness and tingling in the top of her hand and on the top of her forearm, stiffness in her wrist, and numbness and stiffness up into her shoulder and neck. She also testified that when she lifts objects such as a gallon of milk or a pot on the stove she has tingling pain in her wrist and up her forearm to her elbow. She described the sensation as a pulling or pressure through her arm. She also explained that when lifting items, such as a pot on the stove, she has to compensate for the loss of grip strength in her right hand by using her left hand as well.
Morrow explained that her right hand "feels like it's got extra skin, which I can feel hot and cold, it's just not as sensitive, I guess, as my left hand. And it's like your foot being asleep, you know, if you hit it, it's uncomfortable." She testified that she could not apply steady pressure with her right hand, such as the pressure needed to wash a car or to garden. She further testified that when she was able to complete a task that required the application of pressure with her right hand, her right hand and wrist would be stiff and sore the next day.
The trial court concluded that Morrow had suffered a compensable injury to her right arm and awarded her benefits according to the schedule in Ala. Code 1975, § 25-5-57(a)(3). The trial court also determined that Morrow's second injury to her arm was not a compensable injury.
Morrow appealed to the Court of Civil Appeals, arguing that the effects of her injury extended beyond her arm and that she was therefore entitled to an award in excess of the statutorily prescribed amount for an injury to the arm. See Bell v. Driskill,282 Ala. 640, 213 So.2d 806 (1968). She also argued that her second injury was a compensable injury because her first injury contributed to it. The Court of Civil Appeals reversed the judgment of the trial court, holding: (1) that the trial court's finding that Morrow's injury was to a scheduled member, rather than one to her body as a whole, was not supported by substantial evidence; and (2) that the trial court's finding that Morrow's first injury did not cause her second injury was not supported by substantial evidence.[1]
 II.
In its petition to this Court, Dunlop argues that the record contains substantial evidence to support the trial court's finding that Morrow's injury was to a scheduled member, specifically, her arm, rather than to her body as a whole. We agree.
Under Ala. Code 1975, § 25-5-57(a)(3)a.13., the compensation for permanent partial disability for the loss of an arm is 66 2/3% of the worker's average weekly earnings, for 222 weeks. The Court of Civil Appeals, however, held that the trial court's finding that Morrow's injury was to a scheduled member was not supported by substantial evidence, and that she was entitled to compensation in accordance with Ala. Code 1975, § 25-5-57(a)(3)g. Under that section, the compensation for permanent partial disability is "66 2/3 percent of the difference between the average weekly earnings of the worker at the time of the injury and the average weekly earnings he or she is able to earn in his or her partially disabled condition," for a maximum of 300 weeks.
In Bell v. Driskill, supra, this Court held that when the effect of an injury to a scheduled member
 "extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally *Page 1170 
results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the Workmen's Compensation Law to the amount allowed under the schedule for injury to the one member."
282 Ala. at 646, 213 So.2d at 811. The Court of Civil Appeals concluded that the effects of Morrow's injury met the Bell test.
Whether a particular worker's injury meets the Bell test is a question of fact, to be decided by the trial court "based on a preponderance of the evidence." Ala. Code 1975, § 25-5-81(c). "In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2). The Court of Civil Appeals may not "weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014
(Ala.Civ.App. 1995).
In reversing the trial court's judgment, the Court of Civil Appeals held that "`if the effects of an arm injury extend to the hand, then one is not limited to the scheduled benefits provided for the loss of an arm.'" Morrow v. Dunlop Tire Corp., [Ms. 2971073, March 5, 1999] 772 So.2d at 1164 (quoting Cagle v. DunlopTire Corp., 681 So.2d 611, 613 (Ala.Civ.App. 1996), in turn quoting Robbins Tire Rubber Co. v. Elliott, 598 So.2d 931, 933
(Ala.Civ.App. 1992). This rule is inconsistent with the plain meaning of Ala. Code 1975, § 25-5-57(a), and with logic. Clearly, the loss of an arm includes the loss of a hand. See, e.g.,Flicker v. Mac Sign Co., 252 N.Y. 492, 170 N.E. 118 (1930). InFlicker, Chief Judge Cardozo explained that "[w]ith the reservation for greater prudence of exceptional conditions, the scheduled compensation for loss of the larger member must be accepted as compensation for the loss of its component parts."252 N.Y. at 494, 170 N.E. at 118. Accord Nabb v. Haveg Indus.,Inc., 265 A.2d 320 (Del.Super.Ct. 1969) (holding that loss of an arm includes loss of the hand); Armstrong Cork Co. v. Sheppard,222 Miss. 359, 370, 76 So.2d 225, 229 (1954) ("[W]here multiple injuries are sustained by the employee in a single accident, affecting directly two members of the same extremity, if the injuries result in some disability to the greater member other than that occasioned by the disability to the lesser member, the disability rating should be for loss of use of the greater member."). Therefore, to the extent that Cagle and Robbins Tire Rubber Co. stand for the proposition that "if the effects of an arm injury extend to the hand, then one is not limited to the scheduled benefits provided for the loss of an arm," those cases are overruled.
After stating that a worker is not limited to recovery for the loss of an arm when the effect of an arm injury extends to the hand, the Court of Civil Appeals stated that symptoms similar to Morrow's "have been held to take an injury to a scheduled member outside the statute and permit an award based on the worker's loss of ability to earn." Morrow v. Dunlop Tire Corp., 772 So.2d at 1164. The Court of Civil Appeals concluded that Morrow's injuries were similar to the workers' injuries in Robbins Tire Rubber Co.
and United Technologies v. Mims, 549 So.2d 981 (Ala.Civ.App. 1989). In Robbins Tire Rubber Co. and in Mims the trial court found that the worker's injury met the Bell test, and in each case the Court of Civil Appeals affirmed the trial court's judgment.
The Court of Civil Appeals' reliance on Robbins Tire RubberCo. and Mims is misplaced. In each of those cases, the Court of Civil Appeals affirmed the trial court's judgment, holding that the trial court's finding that the injury met the Bell test was supported by the evidence.[2] The conclusion that the evidence in Robbins Tire Rubber Co. and in Mims supported *Page 1171 
the trial courts' findings in those cases, however, does not, in logic, imply the Court of Civil Appeals' conclusion that the evidence in the present case does not support the trial court's finding in this case. The trial court's finding is conclusive if it is supported by substantial evidence. See § 25-5-81(e)(2). The evidence in the record indicates that Morrow injured her right arm and that her use of that arm has been permanently diminished. The evidence in the record does not compel the finding that her injury "produce[d] a greater or more prolonged incapacity than that which naturally results from" the loss of an arm, or that it "cause[d] an abnormal and unusual incapacity with respect to" an arm. Bell, 282 Ala. at 646, 213 So.2d at 811. Therefore, the trial court's finding that Morrow's injury was to her arm rather than to her body as a whole is supported by substantial evidence; we reverse the judgment of the Court of Civil Appeals to the extent it held otherwise.
 III.
Dunlop also argues that the Court of Civil Appeals erred in reversing the trial court's ruling that Morrow's second injury was not compensable. The trial court found that Morrow had "failed to establish a causal connection between the two accidents which would render the second accident which occurred at home compensable." Under the "successive-compensable-injury" test, the issue is not whether the primary injury caused the second accident. See Ex parte Pike County Comm'n, 740 So.2d 1080, 1084
(Ala. 1999). Rather, this Court has held:
 "When determining whether a successive injury is compensable, the general rule is that `[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to [the] claimant's own intentional conduct.'"
Id. In this case, the trial court did not consider whether the second injury was a natural consequence of the primary injury, but considered only whether the primary injury caused the accident that produced the second injury. The Court of Civil Appeals correctly reversed the trial court's judgment insofar as it related to Morrow's claim based on the second injury, but it erred in directing the trial court to enter a judgment holding that the second injury was compensable. The Court of Civil Appeals erred by independently weighing the evidence. See Ex parte Alabama Ins.Guar. Ass'n, 667 So.2d 97, 99 (Ala. 1995).
 IV.
The trial court's judgment holding that Morrow suffered an injury to a scheduled member was supported by substantial evidence; therefore, we reverse that portion of the judgment of the Court of Civil Appeals directing the trial court to render a judgment awarding Morrow compensation for an injury to the body as a whole. The Court of Civil Appeals properly reversed that portion of the trial court's judgment holding that the second injury was not compensable; to that extent, the judgment of the Court of Civil Appeals is affirmed. It erred, however, by independently weighing the evidence and directing the trial court to enter a judgment awarding compensation for that second injury; therefore, we reverse that portion of the judgment of the Court of Civil Appeals directing the trial court to award compensation for the second injury. The case is remanded for the Court of Civil Appeals to remand for further proceedings in the trial court consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Hooper, C.J., and Maddox, Houston, Cook, Lyons, and Brown, JJ., concur.
England, J., concurs in the result.
[1] Judge Thompson dissented, arguing that the trial court's findings were supported by substantial evidence. See 772 So.2d at 1166-67.
[2] Because both cases predated the 1992 amendment to Ala. Code 1975, § 25-5-81, the "scintilla rule" of evidence governed the outcome of those two cases. *Page 1172