ROBERTSON, Presiding Judge.
Alan R. Wagnon filed suit for workmen’s compensation benefits after sustaining a leg injury while performing his job for Alabama Power Company. Following an ore tenus proceeding, the trial court found that Wag-non was permanently and partially disabled as a result of his injury and that he had suffered a 19% loss of ability to earn. The trial court then awarded Wagnon benefits pursuant to § 25 — 5—57(a)(3)g., Code 1975. Alabama Power appeals.
The dispositive issue on appeal is whether the trial court erred in determining that Wagnon had suffered a 19% loss of ability to earn when his post-injury wages were the same as or higher than his pre-injury wages.
At the outset, we note that there is a two-step process in our review of workmen’s compensation cases. We must first determine whether there is any legal evidence to support the trial court’s findings. If such evidence is found, we must then determine whether any reasonable view of that evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
The evidence reveals that Wagnon; a lineman with Alabama Power, was injured on the job on December 21, 1988, when he was struck in the leg by a utility pole that he was unloading from the trailer bed of one of Alabama Power’s trucks. Wagnon was taken to the emergency room, where he was found to have sustained a fracture of the lower left leg. Dr. Philip Williams, a certified orthopedic surgeon, treated Wagnon’s fracture through the application of a series of casts, the last of which was removed in February 1989. Following a period of recovery, Wag-non returned to full-duty work with Alabama Power in September 1989.
Wagnon testified that he continued to experience problems with his leg in the months that followed his return to work and that he eventually sought further treatment from Dr. Williams. Upon reexamination of Wagnon, Dr. Williams determined that Wagnon had, as a result of the original accident, also sustained a tear to the medial meniscus cartilage in his left knee. According to Dr. Williams’s deposition testimony, the function of the medial meniscus is to help guide the shinbone into its proper seating as the leg comes from the bent position to a completely straight position. In February 1991 Dr. Williams performed arthroscopic surgery to remove the torn portion of the medial meniscus from Wagnon’s knee.
In late April 1991, after a period of physical therapy, Wagnon returned to light-duty work with Alabama Power. Dr. Williams released Wagnon to again resume full-duty work in July 1991. At that time, Dr. Williams assigned a permanent impairment *979 rating of 5% to Wagnon’s left leg, based on the loss of a portion of the medial meniscus.
Wagnon was still working as a lineman with Alabama Power at the time of trial in March 1992. Testimony at trial indicated that since returning to work, he has performed all his job duties to the satisfaction of his supervisor. The supervisor testified that Wagnon works without restriction or complaint and that he is highly motivated and enthusiastic about his job.
The evidence shows that Wagnon returned to work for substantially the same wages that he earned prior to his injury and that he now earns wages higher than at the time of his injury. Alabama Power contends that because Wagnon is earning higher wages and is working without limitation or complaint, the trial court erred in finding a 19% loss of earning ability.
It is an established rule of law that where an employee’s wages following a work-related accident are the same as or higher than the employee’s pre-injury wages, a presumption will arise that no loss of earning capacity has occurred. Winn-Dixie of Montgomery, Inc. v. Nobles, 571 So.2d 1174 (Ala.Civ.App.1990). This presumption may be rebutted, however, by independent evidence that demonstrates incapacity or that explains why the post-injury earnings are an unreliable basis for determining the employee’s earning capacity. Id.
In its order, the trial court specifically found that Wagnon had rebutted the presumption arising from his post-injury wages. Upon review of the record, we find considerable evidence in support of the trial court’s determination. Wagnon testified that, despite performing his job duties, he continues to experience difficulties at work because of his injury. He indicated that his knee frequently aches; that he has problems walking, particularly on uneven ground; that he has trouble stooping and squatting; and that the pain in his knee causes him to be apprehensive when climbing utility poles as required by his job. (Wagnon testified that he usually must carry twenty-five to thirty pounds of equipment when climbing a pole.)
While testifying that Wagnon performed all his duties satisfactorily and without the assistance of others, Wagnon’s supervisor and a co-worker acknowledged that Wagnon is not the type of person who tends to complain about pain at work. Wagnon’s wife testified that Wagnon’s pain frequently interferes with his ability to perform ordinary household activities, that Wagnon “drags” his left leg after a long day at work, and that Wagnon frequently wakes up in pain during the night. Wagnon also presented the testimony of a vocational expert, who indicated that it was his opinion that Wagnon had sustained a 19% “vocational employability disability,” or loss of access to jobs, as a result of his injury.
In view of the above, we find that Wagnon presented evidence of incapacity sufficient to rebut the presumption that he had sustained no loss of earning ability. See Container Corp. of America v. Lucas, 598 So.2d 971 (Ala.Civ.App.1992); Winn-Dixie of Montgomery, supra.
Alabama Power contends that the trial court erroneously based its findings on inadmissible testimony provided by the vocational expert. Alabama Power claims that the vocational expert based his opinions solely upon “hiring bias” studies that were not admitted into evidence and that, therefore, the expert’s testimony should not have been admitted over Alabama Power’s objections. However, a cursory review of the expert’s testimony reveals that his opinions were based on any number of factors other than the contested studies. Moreover, there was other evidence sufficient to support the trial court’s judgment. The trial court specifically noted that its findings were based on all the evidence, and in its order it referred to testimony other than just that provided by the vocational expert.
We note that a trial court has considerable discretion in determining an employee’s loss of earning capacity. Harrison v. Champion International Corp., 550 So.2d 1001 (Ala.Civ.App.1989). In arriving at such a determination, the trial court should consider all the evidence, including its own observations. Id.
*980 A reasonable view of the evidence supports the trial court’s conclusion that Wagnon has suffered a 19% loss of earning ability. Therefore, the trial court’s judgment is affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.