ROBERTSON, Presiding Judge.
On January 19, 1993, Joel Yeager filed a complaint in the Jefferson County Circuit Court, seeking workmen’s compensation benefits for a March 4, 1991, injury to his right foot arising out of and in the course of his employment with Lehigh Portland Cement Company.
Following an ore tenus proceeding on November 12, 1993, the trial court, on December 13, 1993, entered its final judgment finding that Yeager had sustained a permanent partial disability as a result of his on-the-job injury; that the injury was to the body as a whole; and that Yeager had sustained a 15% loss of his earning capacity due to his injury.
On January 12, 1994, Lehigh filed a post-judgment motion seeking a new trial; an amendment of the findings; an amendment of the judgment; or an alteration of the judgment. The trial court denied Lehigh’s motion; however, the trial court modified two stipulations, as requested by Lehigh, so that the record would correctly reflect the evidence stipulated to by the parties.
Lehigh appeals, contending (1) that Yeager’s workmen’s compensation benefits should have been limited in accordance with the “scheduled injury” provisions of § 25-5-57(a)(3)a., Ala.Code 1975; and (2) that Yeager failed to rebut the presumption that he had suffered no loss of earning capacity.
At the outset, we note that in reviewing workmen’s compensation cases, this court must first determine whether there exists any legal evidence to support the trial court’s findings. Ex parte Veazey, 637 So.2d 1348 (Ala.1993). Then, if such evidence is found, this court must determine whether one reasonable view of that evidence supports the trial court’s judgment. Id.
Lehigh contends that Yeager’s workmen’s compensation benefits should have been limited in accordance with the scheduled injury provisions of § 25-5-57(a)(3)a., Ala.Code 1975. Our supreme court stated in Bell v. Driskill, 282 Ala. 640, 646, 213 So.2d 806, 811 (1968):
“[A’Jlthough the injury itself is to only one part or member of the body, if the effect of *604 such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the Workmen’s Compensation Law to the amount allowed under the schedule for injury to the one member.”
At the time of trial, Yeager was a 37-year-old plant engineer with Lehigh and had worked at Lehigh for 11 years, since graduating from Penn State University. Yeager was injured on the job when a forklift struck him from behind, knocking him down and running over his right foot. As a consequence of the accident, he suffered the loss of the fifth toe, the loss of one-half of the third toe, and the removal of the bone in the fourth toe. In addition, the tissue and muscle over the top of Yeager’s foot died, requiring a corrective skin graft to that area. At the time of trial, Yeager had returned to full-time employment with Lehigh.
Yeager testified that as a result of his injury his right foot swells; he experiences a significant amount of pain when he stands on the foot for more than an hour or two; his foot has become sensitive to cold weather; and he can no longer participate in recreational activities that involve a significant amount of lateral motion, because of the resulting pain. Yeager also testified that, in order to compensate for the loss of his toes and to maintain his balance, he turns his right foot out, causing a twisting action to the knee that becomes painful by the end of the day.
Dr. Joe Sherrill, Yeager’s orthopedic surgeon, testified by deposition that Yeager is able to do “walking-like” activities with minimal pain, but that he is unable to do some of the things that he could do before his injury. Specifically, Dr. Sherrill found that when Yeager does more than “walking-like” activities, he has some pain and some limitation because of the inadequate lateral support from his toes. Dr. Sherrill determined that Yeager had a 7% impairment rating to the foot, a 5% impairment rating to the lower extremity, and a 2% impairment rating to the body as a whole.
Yeager’s vocational expert, Dr. David Head, testified by deposition that Yeager’s job-related injury had resulted in losses in many areas of Yeager’s life and that the injury Yeager had suffered affected his body as a whole. Dr. Head further testified that any foot injury affecting the use of the lower extremity has some bearing on a person’s ability to stand, walk, or move around in any job.
Contrary to the testimony of Dr. Head and Dr. Sherrill, Ms. Jinnie Lawson, a vocational expert for Lehigh, testified that Yeager suffered no vocational disability.
In this case, the record clearly contains evidence to support the trial court’s findings that Yeager had suffered a permanent partial disability to the body as a whole and that he had suffered a 15% loss of earning capacity. Thus, one reasonable view of that evidence would support the trial court’s judgment that Yeager’s injury produced a greater incapacity than would naturally be expected from the loss of a toe. Veazey, supra.
Lehigh next contends that because Yeager’s salary had increased from $4,200 per month at the time of the injury to $4,500 per month at the time of the trial, the presumption existed that Yeager had suffered no loss of earning capacity. Lehigh further argues that Yeager did not rebut this presumption.
There exists a presumption that an injured employee has suffered no loss of earning capacity when that employee’s post-injury earnings equal or exceed his or her earnings at the time of the injury. Alabama Power Co. v. Wagnon, 627 So.2d 977 (Ala.Civ.App.1993). This presumption may be rebutted, however, by independent evidence that demonstrates the injured employee’s incapacity or by evidence that explains why such post-injury earnings are an unreliable basis for determining the employee’s earning capacity. Id.
Yeager testified that his job as a plant engineer involved an extensive amount of walking and climbing stairs and ladders, and that even though his duties as a plant engi *605 neer had not changed since the injury, the method by which they were executed had changed. Yeager further testified that he needed help performing some of his day-today employment duties, and that Lehigh had allowed him to hire outside contractors to help him perform these duties. In addition, Dr. Head testified in his deposition that Yeager would be at a disadvantage if he sought a job on the open market under normal hiring conditions.
In its order, the trial court specifically found that Yeager had rebutted the presumption of no loss of earning capacity by producing independent evidence of incapacity.
In light of the above, we find that Yeager presented independent evidence of incapacity sufficient to rebut the presumption that he had suffered no loss of earning capacity.
Based on the foregoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.