Cynthia Robinson, as the widow and personal representative of the estate of Albert Robinson, Jr., deceased, and as the representative of Kirby Robinson, a minor, sued King Power Equipment, Inc., on October 24, 1997, seeking to recover workers' compensation death benefits. She alleged that Albert had injured his hand during the course of his employment, and that that injury had resulted in his death. King Power Equipment answered on November 26, 1997, denying that Albert had been injured in an accident that arose out of and in the course of his employment. Following an ore tenus proceeding, the trial court, on November 5, 1999, entered an order finding that Albert's injury had occurred during the course of his employment; it awarded benefits accordingly. On November 8, 1999, the court entered a supplemental order, awarding an attorney fee and ordering the payment of benefits to Cynthia and Kirby either in a lump-sum payment or in weekly installments. King Power Equipment appeals.
This case is governed by the new Workers' Compensation Act. This new Act provides that an appellate court's review of the proof and its consideration of other *Page 725 
legal issues shall be without a presumption of correctness. §25-5-81(e)(1), Ala. Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court "has defined the term `substantial evidence,' as it is used in §12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala. 1996), quoting West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc.,655 So.2d 1012, 1014 (Ala.Civ.App. 1995).
Albert had been employed as a mechanic with King Power Equipment. On August 6, 1997, he suffered an injury to his hand; that injury resulted in a serious infection that ultimately led to his death. The time, place, and circumstances of this injury were hotly disputed at trial. The record indicates that Albert clocked out of work at 5:01 p.m. on Wednesday, August 6, 1997. Cynthia testified that she returned home from work that day between 5:30 p.m. and 6:00 p.m. She stated that Albert also arrived home from work that day between 5:30 p.m. and 6:00 p.m. and told her that he had injured his right hand. Cynthia testified that she wrapped Albert's hand with an Ace bandage, that they then ate dinner and watched television, and then went to bed. She said that they awoke early on Thursday August 7 and that Albert's hand was still hurting, but that he went to work. She stated that Albert returned home shortly and told her that his hand was hurting worse and that he was going to the emergency room at Lakeview Community Hospital in Eufaula.
Albert was admitted to the emergency room at 7:25 a.m. on Thursday August 7. He was first seen by Kevin Smothers, the triage nurse on duty that morning. Smothers's intake sheet indicates that Albert had reported striking his right hand on August 6 with a hammer while he was removing a tire. The intake sheet also indicates a diagnosis of acute pain with an onset at 7:00 p.m. The records of the emergency-room treating physician indicate that Albert had "hit his right hand with a hammer while changing a tire" the day before he arrived at the emergency room. X-rays revealed that Albert had not fractured his hand or arm. He was diagnosed with a sprain, given an injection of pain medicine, prescribed medication, and released.
Cynthia testified that she and Albert went to King Power Equipment at approximately 8:20 a.m., after leaving the emergency room, to give Albert's supervisor the physician's excuse for his absence from work. She stated that she then took Albert home and she went to work. She returned home that day between 5:30 p.m. and 6:00 p.m.; Albert's hand was still hurting. Cynthia testified that Albert's hand continued to hurt throughout the night and that neither of them slept. She stated that Albert's hand began to swell at approximately 2:30 a.m. and that they decided to see Dr. Frances K. Moll early on the morning of Friday August 8. Dr. Moll's records indicate that Albert was changing a tire when he was hit on the back of the right forearm with a hammer or steel bar. Dr. Moll's examination revealed that Albert's right arm was extremely swollen from the fingertips to the axilla (armpit), that blisters had developed, and that Albert could not extend his fingertips. Dr. Moll immediately referred Albert to Dr. George M. McCluskey III, of the Hughston Clinic in Columbus, Georgia.
Dr. McCluskey saw Albert on the morning of Friday August 8. Dr. McCluskey immediately diagnosed Albert with necrotizing *Page 726 
fascitis[1] of the right arm with a "dead hand" and forearm. Dr. McCluskey testified by deposition that Albert's arm was severely swollen, that it was covered with large blood blisters, and that there was no pulse in that arm. Dr. McCluskey testified that Albert was in septic shock from the rapidly spreading infection and that he believed he was near death. He informed Cynthia and Kirby that Albert's condition was life threatening, that he would have to amputate Albert's arm immediately in order to save his life, and that, even with the amputation, Albert had a 50% chance of survival.
Dr. McCluskey amputated Albert's right hand and arm up to the elbow. Following the surgery, Dr. McCluskey informed Cynthia and Kirby that he did not expect Albert to survive through the night. Albert did survive the night, and, on Saturday morning August 9, Dr. McCluskey performed additional surgery to examine the wound. Dr. McCluskey determined that further amputation of Albert's arm was necessary in order to save his life. During this second procedure, Albert went into cardiac arrest and died.
King Power Equipment first argues that the court erred in failing to grant its motion for involuntary dismissal made at the close of Cynthia's case-in-chief. We note that as of October 1, 1995, Rule 52(c), Ala.R.Civ.P., supplanted the involuntary-dismissal procedure in nonjury trials set forth in Rule 41(b), Ala.R.Civ.P. Loggins v. Robinson, 738 So.2d 1268 (Ala.Civ.App. 1999). Thus, we will treat King Power Equipment's motion for involuntary dismissal as one for a judgment on partial findings under Rule 52(c). Rule 52(c) provides:
 "If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence."
Caselaw addressing involuntary dismissals under former Rule 41(b) is equally applicable to a judgment on partial findings entered pursuant to Rule 52(c). Loggins, supra. This court in Loggins set forth the applicable standard of review in such a case, as follows:
 "`[S]ince the Judge is the trier of fact in a nonjury action, he or she may weigh and consider the evidence on a motion for an involuntary dismissal. The normal presumptions of correctness attach to a trial court's ruling on an involuntary dismissal. The trial court's ruling need only be supported by credible evidence and will not be set aside unless it is clearly erroneous or palpably wrong or unjust.'"
738 So.2d at 1271, quoting Feaster v. American Liberty Ins. Co.,410 So.2d 399, 402 (Ala. 1982).
In order for a plaintiff to recover workers' compensation death benefits pursuant to § 25-5-51, he must prove that the employee's death was caused by "an accident arising out of and in the course of his or her employment." Meeks v. Thompson Tractor Co.,686 So.2d 1213 (Ala.Civ.App. 1996). This court stated in Meeks:
 "`Arising out of' means that `the employment was the cause and source of the accident.' `In the course of' means that the injury occurs within the span of the employment at a place where it is reasonable to expect the employee to be and while the employee is reasonably fulfilling the duties of his or her employment or is engaged in some activity incidental to it." *Page 727 
686 So.2d at 1215-16. (Citations omitted.) When King Power Equipment moved for the involuntary dismissal, the court had the following evidence before it: Cynthia's testimony, Albert's death certificate, Albert's medical records, and the deposition testimony of Dr. McCluskey. Cynthia testified that when Albert left for work on Wednesday morning, August 6, he was in good health and had no health complaints of any kind. She stated that when he returned home from work later that day he told her that he had injured his hand. She testified that Albert was not working anywhere else during the time that he was employed by King Power Equipment and that he had no other source of income. Cynthia also stated that she knew of no place that Albert had gone on the day he was injured other than to work at King Power Equipment. Dr. McCluskey testified that during his initial examination of Albert he specifically asked him how he had been injured and Albert had responded that he had injured his hand while changing a tire "on the job" and "on the clock." Further, Albert's death certificate indicates that the injury, which resulted in the condition that led to his death, resulted from an "accident" at "work," and that the place of the injury was the "shop."[2] The hour of the injury was shown on the death certificate as "unavailable."
King Power Equipment argues that Nurse Smothers's triage intake sheet supported a judgment in its favor on partial findings. The sheet indicates that Albert reported hitting his right hand with a hammer while removing a tire. The sheet indicates a diagnosis of acute pain on August 6, 1997, with an onset at 7:00 p.m. King Power Equipment contends that if Albert clocked out of work at 5:01 p.m. on August 6, and the intake sheet states that he injured his hand at 7:00 p.m., he was obviously not at work when the injury occurred. However, the intake sheet is vague and susceptible to more than one meaning. It could mean that Albert had struck his hand at some time before 7:00 p.m., but experienced a worsening of the pain at 7:00 p.m. The meaning of the intake sheet is further clouded by Smothers's testimony. Smothers initially testified that 7:00 p.m. was the time that Albert hit himself with the hammer; however, he later testified that Albert did not specify a time at which he struck his hand with the hammer, he only indicated that he did it "yesterday evening." Smothers further stated that Albert's hand "really started hurting [him] about 7:00 p.m." We conclude that at the time King Power Equipment moved the court for a judgment on partial findings, the court had before it sufficient credible evidence from which it could infer that the injury to Albert's hand arose out of and in the course of his employment with King Power Equipment and that the court's denial of King Power Equipment's motion for a judgment on partial findings was not clearly erroneous.
King Power Equipment next argues that there was not substantial evidence from which the court could conclude that the injury that led to Albert's death was causally related to his employment. Jay Parmer, a former employee of King Power Equipment, testified that when he arrived at work on Thursday August 7 he noticed that Albert was waiting outside the office and that he had an Ace bandage wrapped around his hand. Parmer testified that when he asked Albert about his hand Albert told him that he had "hurt it at home yesterday" when a "bar slipped changing a tractor tire." Brandon Green, a former employee of King Power Equipment, testified that Albert arrived at work early on the morning of Thursday August 7 wearing an Ace bandage on his hand. Green *Page 728 
stated that Albert stayed a short time and then left work. Green testified that he and Parmer asked Albert what had happened to his hand and that Albert had said "he hit it with a hammer changing a tractor tire at home." Green further stated that he was a mechanic at King Power Equipment and that if he had sustained a "knuckle buster" type injury he probably would not have reported it to anyone if he was able to continue working.
William McCook, an employee of King Power Equipment, testified that he was the first employee to arrive at work on Thursday August 7. McCook stated that he was alone when he asked Albert what had happened to his hand and that Albert had told him that he had "hit his hand while changing a tractor tire at home." McCook further stated that employees will, on occasion, change tractor tires at King Power Equipment. Grady W. McLeod, the service manager at King Power Equipment, testified by deposition that when Albert left work on Wednesday August 6 at 5:01 p.m. he had not reported a hand injury to anyone at King Power Equipment. However, McLeod also testified that it was possible that Albert had hurt his hand at King Power Equipment, but did not report the injury because he did not think at that time that it was serious. McLeod testified that Albert telephoned him on Thursday August 7 at 6:40 a.m. and told him that he would not be able to come to work that day because he had "hurt his hand while changing a tractor tire at home." McLeod further stated that Albert came by King Power Equipment later that morning and told him, Parmer, Green, and McCook in the office that "he was changing a tractor tire at home and hurt his hand." McLeod also testified that he would sometimes hear Albert tell other employees that he was going by someone's house after work to do some work.
Kirby, Albert's 13-year-old daughter, testified that when Albert left for work on Wednesday August 6, he had no complaints of pain of any kind. She stated that she returned home from her grandmother's home that day around 5:30 p.m. and that Albert was complaining that he had injured his hand. Kirby testified that Albert had no tractors at home and that she knew of no other jobs or sources of income that he had. Cynthia also stated that Albert did not own a tractor and that he had not worked on a tractor around the time he injured his hand.
After carefully reviewing the record, we conclude that there was substantial evidence from which the trial court could have concluded that the injury that resulted in Albert's death arose out of and in the course of his employment with King Power Equipment. Dr. McCluskey testified that during his initial examination of Albert he specifically asked Albert how the injury had occurred and Albert had told him that he had injured his hand while changing a tire "on the job" and "on the clock." We note that the death certificate indicates that the injury that led to Albert's death resulted from an "accident" that occurred at "work." The evidence further suggests that the initial injury sustained by Albert is a type common to his employment at King Power Equipment and is of such a nature that one may not initially report it to a supervisor. Dr. McCluskey testified that necrotizing fascitis results from some minor trauma such as a bump, a bruise, or a burn.
King Power Equipment presented the testimony of both present and former employees who indicated that Albert had informed them on Thursday morning August 7 that he had injured his hand the previous day while changing a tractor tire at home. The trial court specifically noted that the testimony of these witnesses regarding the circumstances under which Albert made this declaration was inconsistent. The court noted the following inconsistencies: Parmer testified that he was alone when Albert told him that he had hurt his hand at home while changing a tractor tire. Green testified that Albert told both him and Parmer together that he had hurt his *Page 729 
hand at home while changing a tractor tire. McCook testified that he and Albert were alone when Albert told him that he had injured his hand at home while changing a tractor tire. Finally, McLeod testified that Albert told all four of them together — McLeod, Parmer, Green, and McCook — that he had injured his hand at home while changing a tractor tire. The trial court also found that the credibility of the defense testimony was further diluted by the testimony that Albert neither owned a tractor nor performed any mechanic work outside his employment with King Power Equipment.
We note that "the Workers' Compensation Act is to be liberally construed to accomplish its beneficent purposes and that doubts must be resolved in favor of the employee." Sheppard v. Massey Hauling Co., 726 So.2d 682, 684 (Ala.Civ.App. 1998). We further note:
 "`[A] trial court's factual findings based upon conflicting ore tenus evidence will not be disturbed on appeal unless such findings are clearly erroneous or manifestly unjust.' Webb Oil Co. v. Holmes, 660 So.2d 1316, 1319
(Ala.Civ.App. 1995). It is the duty of the trial court, which has the opportunity to observe witnesses and their demeanors, and not the appellate court, to weigh the evidence presented."
726 So.2d at 684. The court was faced with a factual dispute as to whether Albert's injury arose out of and in the course of his employment; it resolved that dispute in favor of the plaintiffs. The trial court's finding on that issue is supported by substantial evidence.
King Power Equipment next argues that the court erred in admitting into evidence certain testimony of Cynthia and Kirby regarding statements Albert allegedly made regarding where he was when he injured himself. The court permitted both Cynthia and Kirby to testify that Albert told them he had injured his hand while at work at King Power Equipment. King Power Equipment raised a hearsay objection to this testimony, contending that the testimony did not fall within any of the recognized hearsay exceptions. It is well settled that a trial court has wide discretion in determining the admissibility of evidence, and its rulings in that regard will not be disturbed on appeal absent an abuse of discretion. Sheppard, supra. We further note:
 "`If there is legal evidence to support the trial court's findings in a workmen's compensation case, the reviewing court will consider issues regarding the trial court's rulings on the admissibility of evidence at trial only if the amount of illegal evidence which was admitted suggests the probability that the trial court's findings were influenced thereby.'"
O'Dazier v. U.S. Steel, Fairfield Works, 644 So.2d 966, 968
(Ala.Civ.App. 1994), quoting M H Valve Co. v. Carmichael,607 So.2d 224, 227 (Ala.Civ.App. 1991). Assuming the admission of this evidence was error, we conclude that it was harmless error, because there was substantial unobjectionable evidence presented to support the court's judgment without this testimony from Cynthia and Kirby. We also note that a close reading of the trial court's order reveals that it did not rely on this testimony in reaching its decision.
King Power Equipment next argues that the court erred in requiring it to pay benefits in a lump sum, without providing for a reapportionment of benefits in the event of certain contingencies that would reduce or eliminate its obligation to pay death benefits. Section 25-5-60, Ala. Code 1975, sets forth the method by which workers' compensation death benefits are to be computed. If there is one dependent, that dependent receives 50% of the average weekly wage of the deceased. § 25-5-60(1)a. If there are two or more dependents, those dependents receive 66 2/3% of the average weekly wage of the deceased. § 25-5-60(1)b. Section25-5-61(1) provides that the wife is presumed to be wholly dependent *Page 730 
upon the deceased "unless it is shown that she was voluntarily living apart from her husband at the time of his injury or death, or unless it is shown that the husband was not in any way contributing to her support and had not in any way contributed to her support for more than 12 months next preceding the occurrence of the injury causing his death." Section 25-5-61(3) provides that the "minor children under the age of 18 years and those over 18, if physically or mentally incapacitated from earning" are presumed to be wholly dependent upon the deceased. It is undisputed that Cynthia and Kirby were Albert's dependents at the time of his death.
Section 25-5-60(1)e., Ala. Code 1975, provides "[i]f compensation is being paid under this article to any dependent, such compensation shall cease upon the death or marriage of such dependent, unless otherwise provided in this article." Section25-5-60(1)f. provides:
 "f. Upon the cessation of compensation to or for any dependent, for any cause, the compensation of the remaining dependents entitled to compensation shall, for the unexpired period during which their compensation is payable, be that which would have been payable to them had they been the only persons entitled to compensation at the time of death of the deceased employee."
However, § 25-5-66 provides:
 "In case of the remarriage of a widow of an employee who has [dependent children], the unpaid balance of compensation, which would otherwise become due her, shall be paid to [such children] or may, on approval by the court, be paid to some suitable person designated by the court for the use and benefit of the dependent."
Further, a dependent who is under the age of 18 years old and not physically or mentally incapacitated from earning loses his or her entitlement to benefits upon reaching the age of 18. Section25-5-65, Ala. Code 1975, provides "[i]n computing and paying compensation to orphans or other children, in all cases, only those under 18 years of age or those over 18 years of age who are physically or mentally incapacitated from earning shall be included." See also Jimmy Stein Motor Lines, Inc. v. Griffin,643 So.2d 1388 (Ala.Civ.App. 1994). Section 25-5-60(2) provides that "compensation shall be paid during dependency, not exceeding 500 weeks."
In its order, the trial court reduced the amount of benefits payable over the statutory period of 500 weeks to a lump-sum amount of $100,512.48. Out of this amount, the court awarded an attorney fee of 15% or $15,076.87 to Cynthia's lawyer. The court then ordered King Power Equipment to pay death benefits to Cynthia for both Cynthia and Kirby in a lump-sum amount of $85,435.61 ($100,512.48 — $15,076.87) or $224.77 per week for 500 weeks. King Power Equipment argues that awarding a lump-sum settlement of death benefits based on a 500-week period without taking into account certain contingencies that could affect its obligation under the Act is error. King Power Equipment contends that certain contingencies, such as the death or remarriage of Cynthia, or Kirby's reaching the age of 18 or marrying, will either reduce or eliminate its obligation under the Act and that it was error for the court to fail to consider these contingencies in its order. We note that the court gave King Power Equipment the option to pay the benefits either in a lump-sum payment or in weekly installments.
This court was faced with a similar issue in Pate v. Miller Transporters, Inc., 381 So.2d 64 (Ala.Civ.App. 1979). In Pate, the trial court entered an order awarding workers' compensation death benefits; however, the court did not provide for a reapportionment of the compensation award in the event of the death or remarriage of the decedent's widow. This court held that the trial court did not err in failing to provide for a reapportionment of benefits should these events occur, because such occurrences are covered by statute. The court noted that the statutes that *Page 731 
provided for reapportionment upon such occurrences were clear and unambiguous and that it would be expected that the mandates of the statutes would be observed. Id. This court's judgment in Pate was affirmed by our supreme court in Ex parte Pate, 381 So.2d 68
(Ala. 1980)
The statutes that provide for the reduction or elimination of King Power Equipment's obligation to pay death benefits upon Cynthia's death or remarriage, or upon Kirby's death, marriage, or obtaining the age of 18, are also clear and unambiguous, and it is also expected that the clear mandates of those statutes would be observed. Therefore, although it would have been desirable for the trial court to have provided for the occurrence of these contingencies in its order, it was not required to do so. Upon the occurrence of a contingency that would reduce or eliminate King Power's obligation, it may petition the court for relief at that time.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
Robertson, P.J., and Monroe, Crawley, and Thompson, JJ., concur.
[1] Dr. McCluskey stated that necrotizing fascitis is an aggressive flesh-eating infection, which involves the soft tissue and which can result from some minor trauma such as a bump, a bruise, or a burn.
[2] King Power Equipment objected to the admission into evidence of Box 28b of the death certificate. Box 28b provides: "DESCRIBE HOW THE INJURY OCCURRED. machinery fell on/or compressed hand." This portion of the death certificate was excluded by the court; however, the remainder of the death certificate was admitted without objection from King Power Equipment.