[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1026 
Dorothy Louise Wright ("the employee") appeals from a judgment entered on partial findings in her action to recover workers' compensation benefits from Hatley Health Care, Inc. ("the employer"). We affirm.
 Facts
On March 13, 2003, the employee was working for the employer as a licensed practical nurse. While the employee was attempting to move a heavy patient off a bed, the bed shifted and struck the employee in the abdomen, forcing her backwards into a wall in a twisting motion. The employee testified that, immediately after the accident, she had felt pain in her stomach, shoulder, neck, head, and mid to upper back and that she had reported the pain to her supervisor. The employee also testified that she had additionally complained of pain in her chest area at the time she reported her injury. The employee denied receiving any injury to her lower back as a result of the accident.
The employee asked to go to a hospital on the date of her accident, but, according to the employee, the employer only authorized her to go to another medical facility. The employee testified that she did not go to the other medical facility because she had no one to drive her.
Three or four days after the accident, the employee visited Dr. Jay Patel, who prescribed medication and restricted the employee to light-duty work. On April 21, 2003, a supervisor and the employer's safety director assigned the employee to light-duty work per a printed form. The employee signed the form under protest, indicating that she did not believe the job outlined in the form constituted light duty. Dr. Patel reviewed the job description on the form and, on April 22, 2003, indicated that the employee could perform the duties outlined in the form. However, he stated that if the employee experienced further problems, he would refer her to an orthopedic surgeon for an evaluation.
The employee left the employment of the employer in May 2003 and has not worked or applied for work since. Around September 2003, Dr. Patel referred the employee to Dr. Robert G. Sorrell, an orthopedist, who prescribed medication and physical therapy. The employee testified that Dr. Sorrell did not treat the parts of her body that she had injured in the accident but, instead, concentrated on her lower back. Dr. Sorrell ordered an MRI of the employee's lower back, which he interpreted as being normal. Dr. Sorrell documented that the employee disagreed with his interpretation because, she asserted, she had had a previous lower back MRI that had shown degenerative changes.
Dr. Sorrell determined that the employee had reached maximum medical improvement ("MMI") on January 22, 2004, and he released the employee to return to work full duty with a 0% impairment rating. The employee testified that Dr. Sorrell's determination of MMI had related *Page 1027 
solely to her lower back, which, she alleged, she had not injured in the accident. The employee testified that she had continued to suffer pain in the various parts of her body that she had originally injured in the accident and that she had reported the pain to Dr. Sorrell. The employee testified that Dr. Sorrell had told her he could not help her, so she had asked for another doctor.
The employee next visited Dr. Hester, whom the employee described as a shoulder doctor. The employee testified that because her shoulders were not her main problem, Dr. Hester had referred her to Dr. Michael Davis, an orthopedic surgeon, who had treated her upper-back, neck, and shoulder areas. Dr. Davis ordered an MRI of the employee's neck, which the employee understood revealed a reversal in the curvature of her spine. The employee testified that she believed this spinal condition was causing muscle spasms and pain in her chest and back area.
After seeing Dr. Davis, the employee visited Dr. Ronald Moon for pain management. Dr. Moon treated the employee with injections in her back and neck, medication, and therapy. In November 2004, the employee underwent a functional-capacity evaluation ("FCE") that indicated that the employee could perform work in the light-to-medium category of labor. According to the evaluation, although the employee had exhibited a lack of maximum effort during the testing, she had demonstrated the ability to bend, stand, reach, squat, crouch, climb stairs, crawl, and rotate while working. Dr. Moon concurred with Dr. Sorrell that the employee had reached MMI on January 22, 2004, and that she had no permanent medical impairment. The employee was treated by Dr. Moon until January 2006, when she was discharged.
The employee testified at the December 14, 2006, trial, that, although none of her authorized treating physicians had examined her stomach, she had undergone a stomach procedure in November 2006 that was performed by an unauthorized medical provider. According to the employee, the procedure had revealed ulcers and other deformities in her stomach that the employee attributed to the use of Celebrex, a medication that Dr. Moon had prescribed for her at some point during her treatment.
The employee testified at trial that she had given maximum effort during her FCE and that she could not perform the activities set out in the FCE report on a continuous basis. The employee testified that the restrictions noted in the FCE report prevented her from performing the normal duties of her job as a licensed practical nurse. The employee testified that she has not worked because of constant pain, her use of "a lot of medications,"[1] headaches, and pain and problems with her stomach, chest, neck, and shoulders, none of which, the employee claims, existed before the accident. The employee testified that she could "possibly" perform a job in which she alternated sitting and standing but that she had not returned to work because none of her physicians had clarified the type of jobs she could perform.
At the conclusion of the employee's direct testimony, the trial court admitted as exhibits the curriculum vitae of Dr. Sorrell, the medical records of Dr. Sorrell, and the medical records of Dr. Moon. At the conclusion of all the employee's testimony, *Page 1028 
the trial court also admitted the depositions of Dr. Sorrel] and Dr. Moon. Just after the trial court admitted those depositions, the employee's attorney requested leave to take another deposition relating to the employee's stomach problems. After the employer's counsel objected, the trial court denied the motion. The following colloquy then took place:
 "BY THE COURT: Could I have a motion from the defense?
 "BY [EMPLOYEE'S COUNSEL]: Well, Your Honor, if I could —
 "BY THE COURT: Have you got any more evidence?
 "BY [EMPLOYEE'S COUNSEL]: Well, we just want to point out certain things about the evidence, but I believe I can do so after he makes his motion.
 "BY THE COURT: No. You better do it before, because I'm fixing to consider a motion to dismiss the case.
 "BY [EMPLOYEE'S COUNSEL]: I was going to include that in my response to his motion to dismiss.
 "BY [EMPLOYER'S COUNSEL]: Your Honor, defense asks for a motion to dismiss."
Although counsel for the employer moved for a dismissal, we treat the employer's motion as one seeking a judgment on partial findings. See Rule 52(c), Ala. R. Civ. P. In response to the employer's motion, the employee's counsel argued that Dr. Sorrell had not treated the employee for the injuries caused by the accident and that Dr. Sorrell had testified in deposition that if the employee had injured her upper back, he would have preferred to have had an MRI on her upper back before placing her at MMI and releasing her to return to work full duty. The employee's counsel also argued that Dr. Moon's records indicated that the employee had actually reached MMI in September 2004, not on January 22, 2004. The employee's counsel further argued that the doctors had agreed that the employee could not return to work full duty, but could only work within the restrictions noted in the FCE report. The employee's counsel asked the court to consider that evidence before ruling on the employer's motion.
The trial court, which had the employee's medical records before it, pointed out that the employee had undergone MRIs of the upper back and neck, the latter of which had shown a mild reversal of the cervical spine indicative of a muscle spasm. The trial court considered those records to contradict the argument of employee's counsel that Dr. Sorrell had not ordered an MRI of the employee's upper back before assigning no impairment and releasing the employee to return to full-duty work. The trial court then pointed out that Dr. Sorrell had, indeed, released the employee to return to full-duty work in contradiction of the employee's argument that she had not been released to return to work full duty. The trial court then asked if the employee had any evidence to support her position on those points. The following colloquy then took place:
 "[BY EMPLOYEE'S COUNSEL]: Yes, I believe we do, Your Honor.
 "BY THE COURT: Well, show it to me right now, and let me see it. If it says something different than what these doctors say —
 "[BY EMPLOYEE'S COUNSEL]: Okay, if I may, Your Honor —
 "BY THE COURT: They say two different things.
 "[BY EMPLOYEE'S COUNSEL]: He says — per Doctor Sorrell, the deposition of Dr. Sorrell says he reviewed, and this is what the deposition will show, Your Honor — *Page 1029 
 "BY THE COURT: No — never mind. We're through now. No, we're through."
The trial court thwarted subsequent attempts by the employee's counsel to summarize the evidence that counsel believed proved the employee's case. The trial court then granted the employer's motion. After the trial court entered its judgment on partial findings, the employee's counsel attempted to recite the evidence that would support the employee's position, but the trial court held the employee's counsel in contempt and would not allow her to state anything further on the record.
On January 4, 2007, the trial court entered its findings of fact and conclusions of law. The trial court indicated that it had considered the deposition testimony of Dr. Sorrell and Dr. Moon, as well as the medical records and other exhibits offered at trial. The trial court found that the employee had suffered some degree of temporary disability from her accident, that she had reached MMI on January 22, 2004, and that she had been assigned a 0% impairment rating by both Dr. Sorrell and Dr. Moon. The trial court further found that the employee had lost no compensable time from work and that she did not have any vocational disability. The trial court found the employee's subjective complaints of pain to be less than credible and unpersuasive to prove any physical injury. The trial court concluded that the employee had no permanent physical injury or permanent disability from the injuries she had received in the accident.
 Analysis
The employee initially argues that the trial court committed reversible error when it failed to consider all the evidence before entering its judgment. The employee also asserts that the trial court erred in failing to award her at least some temporary-disability benefits.
As to the first issue, Rule 52(c), Ala R. Civ. P., states:
 "If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue. . . . Such a judgment may be supported by findings of fact and conclusions of law."
Rule 52(c) has supplanted Rule 41(b), Ala. R. Civ. P., which formerly governed motions for an involuntary dismissal in nonjury cases. See King Power Equip., Inc. v.Robinson, 777 So.2d 723 (Ala.Civ.App. 2000). Although the trial court and the parties referred to a "motion to dismiss," the correct term is now a "motion for judgment on partial findings."
In Merchants Planters Bank Trust Co. ofArkadelphia, Arkansas v. Ensley, 502 So.2d 686 (Ala. 1986), the Alabama Supreme Court held that if a party complains that the trial court overlooked, and therefore failed to consider, some aspect of the evidence in a nonjury case before entering its findings of fact, the party must bring that error to the attention of the trial court by way of a postjudgment motion. Although there is some doubt as to the applicability of theEnsley decision to judgments on partial findings,see 2 Champ Lyons, Jr., and Ally W. Howell,Alabama Rules of Civil Procedure Annotated 120-21 (4th ed. 2004) (implying that Ensley conflicts with Rule 52(b)), we are constrained to follow that decision until the supreme court explicitly limits its holding.
In this case, the employee complains that the trial court did not consider the depositions of Dr. Sorrell and Dr. *Page 1030 
Moon before granting the employer's motion for a judgment on partial findings. However, per Ensley, this court may only consider the trial court's failure to consider all the evidence if that error was brought to the trial court's attention via a post-judgment motion and the trial court has ruled on that postjudgment motion. Otherwise, this court has "nothing to review." Ensley, 502 So.2d at 688.
The employee did not file a post-judgment motion or otherwise move the court to reconsider its judgment on partial findings. Instead, the employee filed a notice of appeal directly to this court. Based on Ensley, this court cannot consider the first issue raised by the employee.
As to the second issue, the employee has failed to prove any entitlement to temporary-disability benefits. Temporary-total-disability benefits are payable to an employee who is unable to perform his or her trade or to obtain reasonably gainful employment during the healing period. Exparte Moncrief 627 So.2d 385 (Ala. 1993). Temporary-partial-disability benefits are payable to an employee who loses part of his or her earning capacity during the healing period. See Alabama By Products Go. v.Landgraff, 248 Ala. 253, 27 So.2d 215 (1946). The healing period is the period during which an employee is recovering from the injurious consequences of the work-related accident to the point the employee's condition stabilizes, i.e., the date the employee reaches MMI. See G.UB.MK. Constructors v.Traffanstedt, 726 So.2d 704, 709 (Ala.Civ.App. 1998).
In this case, it is undisputed that the employee has not earned any wages since she left the employer's employment in May 2003. However, the mere fact of unemployment does not make the employee eligible for temporary-disability benefits. SeeHarvison v. International Paper Co., 569 So.2d 412
(Ala.Civ.App. 1990). The key inquiry is whether that unemployment is due to the employee's inability to earn because of the work-related injury. See, e.g., Goodyear Tire Rubber Co. v. Bradley, 473 So.2d 514 (Ala.Civ.App. 1985).
The trial court had before it evidence indicating that the employee had been released to light-duty work following her accident. The employer offered the employee a light-duty job that the employee's authorized treating physician had approved. The employee objected to the characterization of the job as light duty, but she did not present any evidence indicating that she had attempted but was unable to perform the job duties. She also presented no evidence indicating that she had lost any wages while working light duty. The employee testified that she had quit work because of the pain and other consequences of her injury, but the trial court rejected the employee's subjective testimony as to her pain when weighing the evidence. By finding that the employee had lost no compensable time from work, the trial court, in essence, concluded that the employee's lost wages were not traceable to any disability caused by her work-related injury.
On a Rule 52(c) motion for a judgment on partial findings, a trial court may weigh the evidence and the credibility of the witnesses. Robinson, supra. This court may reverse an order based on a pure finding of fact only if the finding is not supported by substantial evidence. Ala. Code 1975, § 25-5-81(e)(2). "Substantial evidence" is "`evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus.,Inc., 680 So.2d 262, 268 (Ala. 1996) (quoting West v.Founders Life Assurance Co. of *Page 1031 Florida, 547 So.2d 870, 871 (Ala. 1989)). Because a fair-minded person in the exercise of impartial judgment could infer that the employee was not disabled from working light duty for the employer, and because the employee presented no evidence indicating that her earnings would have been reduced while working light duty, we affirm the judgment of the trial court insofar as it denies the employee temporary-disability benefits.
AFFIRMED.
PITTMAN and THOMAS, JJ., concur.
THOMPSON, P.J., and BRYAN, J., concur in the result, without writing.
[1] The employee testified that she was currently taking Darvocet, Skelaxin, Vicofin, Lexapro, and Keflex on a daily basis. Her authorized physicians prescribed the first three medications for pain and muscle spasms.