On February 7, 2003, Jeffrey Stewart sued his former employer, Team America of Tennessee ("Team America"), seeking workers' compensation benefits for an injury Stewart alleged occurred on June 24, 2001. Team America answered and denied liability. Team America later asserted a third-party claim against First Baptist Church of Pleasant Grove ("First Baptist"), which had employed Stewart after he left his employment with Team America.
The trial court conducted a hearing in November 2005. On June 12, 2006, the trial court entered an order finding in favor of First Baptist on Team America's third-party claim; in that order, the trial court concluded that Stewart had suffered a compensable injury during his employment with Team America. On December 20, 2006, the trial court entered a judgment in favor of Stewart on his claims against Team America. See Rule 58(c), Ala. R. Civ. P. In its December 20, 2006, judgment, the trial court awarded Stewart temporary-total-disability benefits and temporary-partial-disability benefits; it also determined that Stewart had suffered a 5% permanent impairment to the body as a whole, and it awarded benefits accordingly. Team America filed a postjudgment motion, which was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P. Team America timely appealed.
The record indicates that Stewart was working as part of a cleaning crew for Team America on June 24, 2001. Stewart *Page 485 
testified that on that date, during the course of his duties, he squatted down and that, as he rose to stand, he felt a "pop" in his right knee; he stated that he could not stand up and that coworkers had to assist him.
Stewart initially sought treatment from his personal physician. Although Team America paid for that initial medical treatment, it then referred Stewart to Dr. Pirofsky, one of its authorized physicians. Team America terminated Stewart's employment on June 29, 2001; Stewart said that Team America cited inadequate job performance as the reason for the termination.[1] Stewart stated that, although he obtained treatment from Dr. Pirofsky, as well as some physical therapy, after he lost his employment he could no longer afford transportation to and from the medical appointments.
The record does not indicate how long Stewart obtained treatment from Dr. Pirofsky or what that treatment entailed. Stewart testified, however, that his knee did not improve during the time he was treated by Dr. Pirofsky. According to Stewart's testimony, Dr. Pirofsky did not place Stewart on any work restrictions or instruct him not to work; Stewart pointed out, however, that he was unemployed during the time he sought treatment from Dr. Pirofsky.
Stewart received unemployment-compensation benefits in the amount of $190 per week after he lost his job with Team America. Stewart testified that he applied for several jobs during the months that he remained unemployed but that his efforts were unsuccessful because he had suffered an on-the-job injury and was under a doctor's care. On January 6, 2002, Stewart began working for First Baptist as the manager of its cleaning crew; his earnings at First Baptist were less than those he had received from Team America. Stewart testified that he experienced pain in his knee while he was performing his job duties for First Baptist. Based on that evidence, Team America filed its third-party claim against First Baptist, alleging that Stewart's employment with First Baptist aggravated his on-the-job injury; because no issues pertaining to that claim are argued on appeal, we pretermit a discussion of the facts regarding that claim. Also, at the time of the hearing in this matter, Stewart was working for another company as an independent contractor; his earnings from that employment are not disclosed in the record.
Stewart testified he was dissatisfied with Dr. Pirofsky's treatment and that he requested that Team America allow him to seek treatment from another doctor. See
§ 25-5-77(a), Ala. Code 1975 ("[i]f the employee is dissatisfied with the initial treating physician selected by the employer . . ., the employee may so advise the employer, and the employee shall be entitled to select a second physician from a panel or list of four physicians selected by the employer"). According to Stewart, he wanted to seek treatment from another doctor, but Team America refused his request. Stewart stated that he then contacted an attorney.
The record indicates that Stewart was given a panel of four physicians, see § 25-5-77(a), from which to choose only after he had obtained legal representation and had filed his February 2003 complaint in this action. Stewart selected Dr. Gaylon Rogers, an orthopedic surgeon. Stewart first saw Dr. Rogers for treatment on January *Page 486 
23, 2004, approximately 31 months after the June 24, 2001, on-the-job injury. Dr. Rogers ordered X-rays and an MRI of Stewart's knee, and, based on the results of those tests, he recommended diagnostic arthroscopic surgery. Dr. Rogers performed surgery on Stewart's knee on March 1, 2004. Ultimately, Dr. Rogers diagnosed Stewart as having a condition in his knee called "chondromalacia," which can be caused by general "wear and tear," by a high-impact trauma, or by a combination of both. Stewart had two postoperative appointments with Dr. Rogers, and Dr. Rogers placed him at maximum medical improvement on April 8, 2004. Stewart testified at the hearing in this matter that as a result of the surgery his knee was "fine" and no longer bothered him. Stewart also testified that his symptoms had been confined to his knee and did not affect other parts of his body. Dr. Rogers assigned Stewart a disability rating of 5% to the lower extremity and 2% to the body as a whole.
Dr. Rogers stated several times that he did not believe Stewart was malingering and that he believed Stewart was truthful. Dr. Rogers also testified that it would have been helpful for Stewart to have obtained treatment from an orthopedic specialist earlier than he did.
The parties entered into several stipulations, including, in relevant part:
 "5. [Stewart] reached maximum medical improvement on April 8, 2004.
 ". . . .
 "7. Dr. Rogers assigned a 5% impairment rating to the right lower extremity and 2% to the body as a whole.
 "8. [Stewart's] average weekly wage while employed by Team America was $821.84.
 "9. [Stewart] did not work from [June 29, 2001], to January 9, 2002. During that time, he received $190 per week in unemployment benefits for 25 weeks.
 "10. [Stewart] began working at First Baptist Church on January 9, 2002. He left that employment on April 30, 2004. His average weekly wage was $432."
On appeal, Team America first challenges the trial court's award to Stewart of temporary-partial-disability benefits. Team America also contends that this court should review this issue as if the facts of this case are undisputed and only questions of law are implicated. However, the parties dispute whether Stewart was temporarily partially disabled after leaving his employment with Team America. Thus, this issue involves a factual determination.
When this court reviews a trial court's factual findings in a workers' compensation judgment, the judgment will not be reversed if the findings are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). This court reviews the facts in a light most favorable to the trial court's resolution of the disputed facts.Whitsett v. BAMSI, Inc., 652 So.2d 287, 290
(Ala.Civ.App. 1994), overruled on other grounds, Ex parteTrinity Indus., Inc., 680 So.2d 262 (Ala. 1996). However, a trial court's legal conclusions, i.e., the application of the law to the facts, are afforded no presumption of correctness, and this court reviews them de novo. Ex parte Cash,624 So.2d 576 (Ala. 1993). *Page 487 
With regard to an award of temporary-partial-disability benefits, this court has explained:
 "Temporary-total-disability benefits are payable to an employee who is unable to perform his or her trade or to obtain reasonably gainful employment during the healing period. Ex parte Moncrief, 627 So.2d 385 (Ala. 1993). Temporary-partial-disability benefits are payable to an employee who loses part of his or her earning capacity during the healing period. See Alabama By-Products Co. v. Landgraff, 248 Ala.253, 27 So.2d 215 (1946). The healing period is the period during which an employee is recovering from the injurious consequences of the work-related accident to the point the employee's condition stabilizes, i.e., the date the employee reaches MMI. See G.UB.MK. Constructors v. Traffanstedt, 726 So.2d 704, 709 (Ala.Civ.App. 1998)."
Wright v. Hatley Health Care, Inc., 980 So.2d 1024,1030 (Ala.Civ.App. 2007).
Pursuant to § 25-5-57(a)(2)a., Ala. Code 1975, part of Alabama's Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975, temporary-partial-disability benefits are to be awarded as follows:
 "a. Amount and Duration of Compensation. For temporary partial disability, the compensation shall be 662/3 percent of the difference between the average weekly earnings of the worker at the time of the injury and the average weekly earnings he or she is able to earn in his or her partially disabled condition. This compensation shall be paid during the period of the disability, but not beyond 300 weeks. . . ."
In reaching its award of temporary-partial-disability benefits, the trial court credited against the amount of benefits due the amount of unemployment-compensation benefits Stewart received, and, for the period he was employed, the amount of Stewart's salary with First Baptist. Specifically, the award read:
 "5. The Court finds [Stewart's] weekly Temporary Partial Disability (TPD) payments should equal $421.22 during the period Mr. Stewart was receiving unemployment (2/3 x ($821.84-$190.00)) and $259.89 from the time Mr. Stewart worked at First Baptist until he reached MMI (2/3 x ($821.84-432.00)) for a total sum of $41,717.30 (25 weeks x $421.22 plus 120 weeks x $259.89)."
We note that Stewart has not challenged the calculation of his workers' compensation award.
Team America, citing § 25-5-57(a)(2) and Wright v.Hatley Health Care, Inc., supra, argues that, in order to be entitled to an award of temporary-partial-disability benefits, Stewart was required to show a causal link between his injury and his diminished earning capacity. Team America points out that "the mere fact of unemployment does not make [Stewart] eligible for temporary-disability benefits. . . . The key inquiry is whether that unemployment is due to [Stewart's] inability to earn because of the work-related injury."Wright v. Hatley Health Care, Inc., 980 So.2d at 1030. Team America contends that Stewart failed to present evidence of an inability to earn because of his on-the-job injury.
Stewart presented evidence, however, that during the 25-week period he was unemployed following the termination of his employment with Team America, some potential employers had refused to hire him because of his injury. When Stewart did obtain employment at First Baptist, his earnings were greatly reduced from what he had earned while employed with Team America. Thus, there was substantial evidence from which the trial court could have determined that Stewart's on-the-job injury had caused an inability to earn. Further, the trial court determined that the length of Stewart's temporary *Page 488 
partial disability was due to Team America's failure to provide him requested medical treatment until approximately 31 months after his on-the-job injury. Specifically, the trial court found:
 "[Team America] is responsible for [Stewart's] [temporary-total-disability benefits] and [temporary-partial-disability benefits] from the date of [Stewart's] injury until his MMI date of April 8, 2004 as a result of the evidence produced in Court. Said evidence includes [Stewart's] testimony that he could not find a place to work for the same amount of income in light of his injury, in addition to the evidence regarding [Team America's] delay in providing a panel of four (4) orthopaedic physicians. Had [Team America] provided a panel of four (4) orthopaedic physicians when the panel was originally requested, Mr. Stewart might have had surgery sooner, and consequently, Mr. Stewart may have been able to return to work at his previous wage sooner. [Team America] cannot deny a panel of four (4) orthopaedic physicians, as provided by statute, and then claim the benefit of such a delay."
Team America contends that the foregoing is not relevant to a determination whether Stewart could be awarded temporary-partial-disability benefits under § 25-5-57(a)(2) and Wright, supra. Given the facts of this case, however, we do not agree. The evidence in the record supports a conclusion that Stewart's earning capacity was diminished by the on-the-job injury, and it supports the trial court's determination that that diminished earning capacity might have been alleviated had Stewart received treatment from another doctor when he requested it. Under the facts of this case, we hold that substantial evidence supports the trial court's determination that Stewart was entitled to an award of temporary-partial-disability benefits. Given the arguments presented to this court, we cannot say that Team America has demonstrated that the trial court erred in reaching its temporary-partial-disability award.
Team America also contends that the trial court erred in determining that Stewart had suffered a 5% impairment to the body as a whole and, based on that finding, in awarding workers' compensation benefits outside the benefits schedule set forth in § 25-5-57(a)(3), Ala. Code 1975. Team America does not challenge the trial court's finding that Stewart is permanently partially disabled; it challenges only the trial court's determination of the extent of that disability. Team America argues that there is no evidence in the record indicating that the injury to Stewart's knee "extend[ed] to other parts of the body, and interfere[d] with their efficiency," and that, accordingly, the compensation for Stewart's knee injury should be confined to the § 25-5-57(a)(3) schedule. See Exparte Drummond Co., 837 So.2d 831, 833 (Ala. 2002) (quotingBell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968)). We agree. We also note that in his brief submitted to this court, Stewart concedes that his recovery for the injury to his knee should be compensated by reference to the schedule in § 25-5-57(a)(3). Accordingly, we reverse the trial court's judgment pertaining to its permanent-partial-disability finding, and we remand the cause to the trial court for a determination of the appropriate amount of Stewart's permanent-partial-disability benefits.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.
[1] Stewart did not dispute that characterization, nor did he file a wrongful-termination claim. *Page 489