Rel: September 27, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2024

———————————————————

### CL-2023-0800

———————————————————

**Jimmy Dale Harrison, the surviving spouse and dependent of Rose Harrison, deceased**

**v.**

**Marion Regional Nursing Home**

**Appeal from Marion Circuit Court**
**(CV-21-900020)**

LEWIS, Judge.

Jimmy Dale Harrison, the surviving spouse and dependent of Rose

Harrison ("the employee"), deceased, appeals from a judgment entered by

the Marion Circuit Court ("the trial court") in favor of Marion Regional Nursing Home ("Marion").[1] We affirm the trial court's judgment.

Procedural History

On March 23, 2021, Harrison, as the surviving spouse and dependent of the employee, filed a complaint for workers' compensation benefits against Marion.[2] Marion answered the complaint on April 12, 2021, and filed an amended answer on July 2, 2021.

A trial was held on September 20, 2023. At the conclusion of the presentation of Harrison's case, Marion moved for a judgment as a matter of law; that motion was granted. On October 2, 2023, the trial court entered in favor of Marion what it referred to as a judgment as a matter of law,[3] which set forth specific findings of fact and conclusions of law.

---

[1]A dependent surviving spouse of an employee may file a complaint for workers' compensation death benefits. See, e.g. Ala. Code 1975, § 25-5-81(a)(1) and (b); Lawler & Cole CPAs, LLC v. Cole, 267 So. 3d 311, 312 n.1 (Ala. Civ. App. 2018)

[2]The complaint alleged that the employee had experienced an "accident/contraction of an occupational disease." However, only the issue whether the employee contracted an occupational disease is argued on appeal.

[3]As discussed infra, the judgment is more properly referred to as a judgment on partial findings.

The trial court found that Harrison failed to prove that the COVID-19 virus is "more peculiar to or prevalent in a nursing occupation than any other general occupation[]." The trial court also found that Harrison failed to prove that the employee had contracted the COVID-19 virus in the course of her employment at Marion. The trial court's judgment specifically explained:

> "The evidence is undisputed that [the employee] was exposed to several other people and places where she could have contracted Covid-19 in the weeks and days preceding her death that are totally unrelated to her employment with Marion. The evidence establishes that there were several other exposures that [the employee] was having daily with others which show potentially limitless Covid-19 exposures that [the employee] had that could have resulted in or caused her to contract Covid-19. Many of if not most of which were totally unrelated to her employment."

Harrison filed his notice of appeal on November 9, 2023.

## Evidence

Marion operates a nursing home in Hamilton. The parties stipulated, among other things, that the employee was an employee of Marion; that the parties are subject to the Workers' Compensation Act, Ala. Code 1975, §§ 25-5-1 et seq.; and that Harrison is a partial dependent of the employee.

According to April Holcomb, who has been employed as the director of the Marion facility since January 2020, the employee's primary duty at the Marion facility during the relevant time was working as a Medical Data Set ("MDS"), which involved collecting information to obtain compensation from Medicaid and Medicare. According to Susan Nixon, who is employed as a registered nurse by Marion, the employee performed her MDS duties in an office within the Marion facility. However, both Holcomb and Nixon testified that, in March 2020, the employee had also worked as a registered nurse when needed to perform duties for Marion employees who had been absent from work.

Holcomb testified that, between March 1, 2020, and April 6, 2020, two Marion residents, T.W. and M.L., tested positive for having contracted the COVID-19 virus. She testified that those two residents had resided in rooms within the section of the Marion facility containing "rooms 1 through 16".

Nixon testified that, in March 2020, her normal job duties had involved working the medicine cart, i.e., distributing medicine to, and

4

having face-to-face contact with, residents in rooms 1 through 16.[4] According to Nixon, she also charted and answered the telephone at the nurse's station. She testified that, during the time that she was present in a room with a patient, she would wipe the patient's mouth if that patient had a productive cough. She testified that she had probably dispensed medicine to T.W. in March 2020.

Nixon contracted the COVID-19 virus in March 2020. She testified that she had worked on March 16, 2020, and had felt "great" that day but had begun feeling "bad" that night. According to Nixon, within the next day or two, she went to see a physician. Nixon was tested for the COVID-19 virus, and her test returned with a positive result.[5] Nixon testified that she had been absent from work from March 17, 2020, through April 20, 2020.

Holcomb testified that, between March 17, 2020, and April 3, 2020, the employee had worked in a capacity outside her normal MDS duties

---

[4]Nixon testified that rooms 1 through 5 were single-occupancy rooms and that rooms 6 through 16 were double-occupancy rooms.

[5]When confronted with her affidavit that stated she was diagnosed prior to March 17, 2020, Nixon stated that her statement in the affidavit was incorrect.

on approximately three days: March 25, 2020, March 30, 2020, and April 2, 2020. She specifically testified that, on March 25, 2020, the employee had worked the medicine cart, which involved passing out medications to both T.W. and M.L.

Julie McCord, the system director for infection control for North Mississippi Health Services, testified that she was at the Marion facility on April 2, 2023, to help test all Marion employees and residents for COVID-19. According to McCord, the employee was involved with the testing of residents. Specifically, McCord testified that, once a resident's nose had been swabbed with the nasal pharyngeal swab, the swab had been placed in a case. The case containing the swab was given to the employee, who placed the case in a cooler. According to McCord, the employee handled more than 40 samples on April 2, 2020; McCord testified that the employee had been outfitted in full personal protective equipment ("PPE") on that date. When McCord was questioned regarding the incubation period[6] for the COVID-19 virus, she testified

---

[6]Amanda Williams, one of the employee's daughters who is also a nurse, testified that the "incubation period" is the time from exposure to a disease to the onset of symptoms.

that she assumes that, in 2020, the incubation period had been determined to be four to six days.

Holcomb testified that the first time a Marion employee had registered a temperature over 100.4 degrees was on March 28, 2020, and the second time was on April 1, 2020. She testified that Marion had begun requiring universal masking of employees on March 31, 2020.[7] According to Holcomb, up until April 6, 2020, Nixon was the only nurse who was excluded from working at the Marion facility because of having tested positive for the COVID-19 virus or having symptoms of the COVID-19 virus.

Holcomb testified that the employee had also worked for Sunset Manor, which operated another nursing home, on some weekends, performing both nursing and MDS duties. According to Holcomb, the employee had administered medication to 17 residents at the Sunset Manor facility.

---

[7]As of March 31, 2020, Marion no longer allowed visitors.

Holcomb testified that the employee had worked at the Sunset Manor facility on March 21, 2020, and March 22, 2020.[8] According to Holcomb, the employee had informed her that, on both those dates, the employee had been exposed to a Sunset Manor resident who had exhibited symptoms of the COVID-19 virus. However, there was no evidence indicating that that particular Sunset Manor resident had tested positive for the COVID-19 virus. In fact, one of the employee's daughters, Jessica Wallace, who also worked at the Sunset Manor facility, testified that no residents of the Sunset Manor facility had tested positive for the COVID-19 virus before April 6, 2020.[9] Although Holcomb testified that the employee had informed her that she had taken precautions around the resident who had symptoms of the COVID-19 virus, Wallace testified that Sunset Manor had no policies requiring

---

[8]According to Mr. Harrison, the employee normally worked at the Sunset Manor facility every other weekend. He testified that she had not worked at the Sunset Manor facility on March 28, 2020, or March 29, 2020.

[9]According to Wallace, she was on maternity leave during March 2020 and did not return to work until April 2020. She testified that she had intended to return to work at the Sunset Manor facility on April 1, 2020, but that she had been prohibited from returning because of the employee's COVID-19 diagnosis.

employees to take precautions against the COVID-19 virus before April 6, 2020.

Holcomb testified concerning text messages exchanged between her and the employee in March 2020. On March 21, 2020, the employee had informed Holcomb via text message that she had possibly been exposed to the COVID-19 virus at the Sunset Manor facility, and the employee inquired whether she should report to work at the Marion facility the next day. After being assured that the employee did not have a fever, Holcomb wrote: "At this point … every rotation and everyone in leadership has been exposed." Holcomb testified that what she meant by that text was that everyone, not just employees and residents of the Marion facility, had been exposed by "vendors, going to Walmart, [and/or] eating out." The employee reported to work at the Marion facility on March 24, 2020. Because of the employee's potential exposure to the COVID-19 virus, she was required to wear a mask at the Marion facility.

Holcomb testified that, on March 29, 2020, the employee had stated that she was having problems with her thyroid and that she was tired. Harrison confirmed that the employee had suffered from thyroid problems and stated that the employee had complained of being tired

9

during the week of March 30, 2020. Amanda Williams, another daughter

of the employee, testified that she had taken the employee to the hospital

in the early morning hours of April 4, 2020.

Hospital records introduced into evidence explain:

"The patient is a 60 [year old] female who presented to the [emergency department] complaining of [shortness of breath] that began 8 hours prior to arrival. She has had a productive cough and a temp to 102.0. She works at a nursing home that has had multiple patients positive for COVID 19. She was found to have an [Oxygen] sat of 88% on arrival. She does not have any history [of] respiratory illnesses. She does not smoke. Radiologist read the chest xray as mild patch bilateral lower lobe infiltrates. She has had a COVID 19 test performed but has not gotten the results.

"She reported she been dyspneic for about a week, but it has just continued to worsen. 04/03/2020 she checked her [Oxygen] levels and they were low 80's and this is what prompted her to come to hospital. She has been having a cough, mostly dry. Taking deep breaths makes her cough more. Despite her dyspnea, she has cont'd to work at the [Marion facility] for the past week, she says. She has had N/V for a few days as well. She reports that she actually feels a little better already."

The employee died on April 6, 2020. On the death certificate, the

immediate cause of death was listed as "acute respiratory failure"; the

COVID-19 virus was listed as a condition leading to the immediate cause.

Holcomb testified that the employee had also worked at a family

restaurant during the relevant time; however, Harrison testified that

that restaurant had closed in December 2019. According to Harrison, during the relevant time, the employee had only worked, spent time at the home where she and Harrison lived, and visited the employee's adult children once per week. Harrison testified that he drove a bus containing approximately 30-40 students until March 15, 2020. Thereafter, his job was to drive a "Wi-Fi" bus to a location, after which his supervisor would drive him back to his vehicle. Harrison testified that he had never had the COVID-19 virus.

Williams testified that she had worked at a hospital during the relevant period. She admitted that she and the employee had attended a beauty pageant in a large setting on March 7, 2020, and March 8, 2020, and that no one at that pageant wore masks. She testified that neither she nor her immediate family had the COVID-19 virus prior to April 6, 2020. However, she contracted the COVID-19 virus after she drove the employee to the hospital. Wallace also testified that neither she nor her immediate family had the COVID-19 virus prior to April 6, 2020.

### Standard of Review

"'[When a] trial court receive[s] ore tenus evidence without a jury, … a motion for a "judgment as a matter of law" is properly referred to as a motion for a "judgment on partial findings." See Rule 52(c), Ala. R. Civ. P.; Lawson v. Harris

11

Culinary Enters., LLC, 83 So. 3d 483, 495 n.7 (Ala. 2011). …
Our supreme court has explained:

> "'"Rule 52(c), Ala. R. Civ. P., supplanted the involuntary-dismissal procedure in nonjury trials set forth in Rule 41(b), Ala. R. Civ. P. Loggins v. Robinson, 738 So. 2d 1268 (Ala. Civ. App. 1999). Thus, we will treat ... [a] motion for involuntary dismissal as one for a judgment on partial findings under Rule 52(c). Rule 52(c) provides:
>
>> "'"'If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence.'"'"

Taylor v. Hoehn, 299 So. 3d 244, 248 (Ala. 2020) (quoting Reeves v. Fancher, 210 So. 3d 595, 598 (Ala. Civ. App. 2016) quoting in turn King Power Equip., Inc. v. Robinson, 777 So. 2d 723, 726 (Ala. Civ. App. 2000)).

> "On a Rule 52(c) motion for a judgment on partial findings, a trial court may weigh the evidence and the credibility of the witnesses. [King Power Equip, Inc. v.] Robinson, [777 So. 2d 723 (Ala. Civ. App. 2000)]. This court may reverse an order based on a pure finding of fact only if the finding is not supported by substantial evidence. Ala. Code 1975, § 25-5-81(e)(2). 'Substantial evidence' is ' "evidence of such weight and quality that fair-minded persons in the

exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."' Ex parte Trinity Indus., Inc., 680 So. 2d 262, 268 (Ala. 1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989))."

Wright v. Hatley Health Care, Inc., 980 So. 2d 1024, 1030 (Ala. Civ. App. 2007).  The trial court's findings of fact concerning whether an employee suffered from an occupational disease must be supported by a preponderance of the evidence.  ArvinMeritor, Inc. v. Handley, 12 So. 3d 669, 683-84 (Ala. Civ. App. 2007); Jeanswear v. Taylor, 899 So. 2d 1002 (Ala. Civ. App. 2004).

Discussion

On appeal, Harrison argues that the trial court erred in granting Marion's motion for partial findings on his claim for partial-dependent death benefits under the Workers' Compensation Act because, he says, he proved that the employee's death was caused by an occupational disease.

Section 25-5-110(1), Ala. Code 1975, defines "occupational disease" as

> "[a] disease arising out of and in the course of employment, … which is due to hazards in excess of those ordinarily incident to employment in general and is peculiar to the occupation in which the employee is engaged but without regard to

13

negligence or fault, if any, of the employer. A disease … shall be deemed an occupational disease only if caused by a hazard recognized as peculiar to a particular trade, process, occupation, or employment as a direct result of exposure, over a period of time, to the normal working conditions of the trade, process, occupation, or employment."

In the present case, in a judgment on partial findings, the trial court found that the COVID-19 virus is not an occupational disease because it is not "more peculiar to or prevalent in a nursing occupation than any other general occupation[]" but is instead "a seasonal flu to which all individuals whether in the work force or not are equally exposed."  The trial court also found that Harrison failed to prove that the employee had contracted the COVID-19 virus in the course of her employment with Marion.  See § 25-5-110(1).  If either of those findings are supported by the evidence, the trial court's judgment is due to be affirmed.  See id. (defining "[o]ccupational disease as "[a] disease arising out of and in the course of employment" (emphasis added)).

We first address the issue of whether Harrison proved that the employee contracted the COVID-19 virus in the course of her employment with Marion.  In this case, the trial court pointed out that Harrison had presented no expert testimony.  Moreover, the trial court noted that the employee in this case had worn PPE at her job during the

14

relevant time period and that she had not limited her contact with others to her workplace. The evidence indicated that the employee had dispensed medication to two COVID-19-positive patients at the Marion facility on March 25, 2020, nine days before the employee's low oxygen levels prompted her to go to the hospital, and the hospital records indicated that the employee had been dyspneic for a week leading up to her admission and had continued to worsen. However, there was also testimony indicating that the employee suffered from thyroid problems during that same week, leading to ambiguity in the timing of the onset of the employee's illness. Additionally, the testimony concerning the incubation period was equivocal, leaving uncertainty concerning the timing of the contraction of the disease.

Because of the absence of unequivocal evidence, whether factual or expert, that the employee contracted the COVID-19 virus in the course of her employment with Marion, the trial court's determination that Harrison failed to prove by a preponderance of the evidence that the employee contracted the COVID-19 virus at her workplace must be upheld. Because the failure of proof on that issue is fatal to Harrison's claim, see § 25-5-110 (defining "[o]ccupational disease as "[a] disease

arising out of <u>and</u> in the course of employment"), we pretermit discussion of whether the trial court correctly found that the COVID-19 virus is not "more peculiar to or prevalent in a nursing occupation than any other general occupations" but is instead "a seasonal flu to which all individuals whether in the work force or not are equally exposed."

<u>Conclusion</u>

Based on the foregoing, the trial court's judgment on partial findings is affirmed.

AFFIRMED.

Moore, P.J., and Edwards, Hanson, and Fridy, JJ., concur.